1              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
2

3    _____

4    UNITED STATES OF AMERICA,              )
                                            )
5              Plaintiff,                   )
                                            )
6        v.                                 )    Criminal Action No.
                                            )    1:21-cr-10256-IT
7    KINGSLEY CHIN, ADITYA HUMAD, and       )
     SPINEFRONTIER, INC.,                   )
8                                           )
               Defendants.                  )
9                                           )

10   _____

11

12      BEFORE THE HONORABLE INDIRA TALWANI, DISTRICT JUDGE

13

14                PRETRIAL VIDEOCONFERENCE

15

                   Friday, December 8, 2023
16                      10:01 a.m.

17

18

19

20

21   John J. Moakley United States Courthouse
     Courtroom No. 9
22   One Courthouse Way
     Boston, Massachusetts
23

24   Robert W. Paschal, RMR, CRR
     Official Court Reporter
25   rwp.reporter@gmail.com

**A P P E A R A N C E S**

On behalf of the Government:

    UNITED STATES ATTORNEY'S OFFICE
    BY:  ABRAHAM R. GEORGE
         CHRISTOPHER R. LOONEY
    One Courthouse Way
    Suite 9200
    Boston, MA  02210
    (617) 748-3152
    abraham.george@usdoj.gov
    christopher.looney@usdoj.gov

On behalf of Defendants Kingsley Chin and
SpineFrontier, Inc.:

    POLLACK SOLOMON DUFFY LLP
    BY:  BARRY S. POLLACK
         JOSHUA L. SOLOMON
    31 St. James Avenue
    Suite 940
    Boston, MA  02116
    (617) 439-9800
    bpollack@psdfirm.com
    jsolomon@psdfirm.com

On behalf of Defendant Aditya Humad:

    FICK & MARX LLP
    BY:  WILLIAM W. FICK
         DANIEL N. MARX
    24 Federal Street
    4th Floor
    Boston, MA  02110
    (857) 321-8360
    wfick@fickmarx.com
    dmarx@fickmarx.com

**P R O C E E D I N G S**

1
2              (In open court at 10:01 a.m.)

3              THE DEPUTY CLERK:  United States District Court is

4      now in session, the Honorable Judge Indira Talwani presiding.

5                 This is Case Number 21-cr-10256, United States v.

6      Kingsley R. Chin, Aditya Humad, and SpineFrontier, Inc.  Will

7      counsel please identify themselves for the record.

8              MR. GEORGE:  Good morning, Your Honor.  This is

9      Abraham George for the United States, and I'm joined by my

10     colleague AUSA Christopher Looney.

11             THE COURT:  Good morning.

12             MR. LOONEY:  Good morning.

13             MR. POLLACK:  Good morning, Your Honor.  Barry

14     Pollack on behalf of Defendant Dr. Kingsley Chin and

15     SpineFrontier, Inc., and I'm joined by my partner Josh

16     Solomon.

17             THE COURT:  Good morning.

18             MR. SOLOMON:  Good morning, Your Honor.

19             MR. FICK:  And good morning, Your Honor.  William

20     Fick for Defendant Aditya Humad, and I'm joined by Daniel

21     Marx, my partner.

22             THE COURT:  Good morning.  Welcome to the session.

23             MR. GEORGE:  Thank you, Your Honor.

24             THE COURT:  So I have the final status report, and

25     it looks like we're probably looking for some dates here,

1    including trial dates, correct?

2         MR. GEORGE:  That's right, Your Honor.

3         THE COURT:  How long a trial is the government

4    anticipating?

5         MR. GEORGE:  Your Honor, we're anticipating three

6    to five weeks.  I'm not -- I think probably closer to three.

7    I'm not sure if -- does Your Honor do half days or full days?

8         THE COURT:  9:00 to 1:00.

9         MR. GEORGE:  9:00 to 1:00.  I think --

10        THE COURT:  Although my last jury was the first

11   time I've had someone sort of push for a little longer,

12   suggesting 9:00 to 2:00 and inching it up.  But, typically, I

13   do 9:00 to 1:00.

14        MR. GEORGE:  Okay.  Obviously, we want to go as

15   quickly as possible.  We're hoping for it to be three weeks.

16   It might be a little longer than that.

17        THE COURT:  Okay.  And do the defendants see this

18   as, for a time estimate, somewhere in the three-week

19   ballpark, or are you looking for a few more weeks beyond

20   that?

21        MR. FICK:  Well, I think we certainly also would

22   not like it to drag on too long.  I do think there's a

23   likelihood of there being some defense case.  You know, is it

24   one day or five?  Probably closer to one, but there's a lot

25   to be figured out between now and then.

1            THE COURT:  Okay.  So it may make sense to try to

2    find a four-week block.  How soon are the parties able to go

3    to trial?

4            MR. POLLACK:  Your Honor, before Your Honor joined

5    the call, counsel were discussing late September, because

6    there's some anticipated motion practice that we would ask to

7    file in late January.  And it seemed like -- I think early

8    September came up, and then there were concerns about

9    vacations and the like, so late September seemed to be the

10   consensus.

11           THE COURT:  And I guess I could do a summer,

12   starting July 15th.  Are the parties not interested in a

13   summer date?  You don't think you'll be ready by then?

14           MR. POLLACK:  We're concerned that we will not be

15   ready by then, Your Honor.  And I -- and I think there will

16   be some substantial motion practice as well.

17           THE COURT:  Okay.  Ms. Marchione, how does our

18   September look?

19           THE DEPUTY CLERK:  Your Honor, we could begin a

20   trial late September, beginning September 23rd.

21           THE COURT:  Okay.  And we have a trial before that?

22           THE DEPUTY CLERK:  No, Your Honor.  We have --

23   September is free.

24           THE COURT:  So we could start earlier?  What's the

25   earliest we can get started in September, folks?

```
 1              MR. GEORGE:  Your Honor, for the government, I
 2     think there's some vacations scheduled the last week of
 3     August into right around Labor Day.  So, obviously, we'll
 4     start when you tell us to, but we'd prefer to be as late as
 5     possible in September, if it can't be, you know, the end.
 6              THE COURT:  And do we have Jewish holidays in
 7     September this year?  Do we know where those are?
 8              MR. GEORGE:  I just looked that up, Your Honor.
 9     It's October 2nd is Rosh Hashanah.
10              THE COURT:  I'm sorry?  October 2nd?
11              MR. MARX:  Thursday and Friday of that week,
12     Your Honor.
13              MR. GEORGE:  Yeah.
14              THE COURT:  So if we started on the 9th, then we
15     wouldn't be likely getting into the holidays.  I just -- you
16     know, we get a case, and then we're starting to lose jury or
17     counsel for that, those holidays.  That makes it more
18     difficult.
19              MR. GEORGE:  We -- if it helps, Your Honor, we
20     would also be amenable to October, if you'd prefer.
21              THE COURT:  It's a 2021 case, so --
22              MR. GEORGE:  Yeah, we're happy to do it whenever --
23     whenever you say, but --
24              THE COURT:  Well, I have no conflict with the
25     Jewish holidays, and I don't know if any of you do.  It's
```

1    just a question that it could impact your jury or could

2    impact you.  So how do you feel about starting on the 16th,

3    but recognizing that that could mean that we have jurors who

4    don't want to sit the 2nd and 3rd?

5              MR. GEORGE:  That -- we're amenable to that,

6    Your Honor.

7              MR. MARX:  Yeah, so it would be a conflict for me,

8    Your Honor.  Of course, I have co-counsel, and if necessary,

9    I wouldn't want to delay everything if it works for everyone

10   else.  But the earlier date in September would be preferable,

11   if we can avoid that conflict.

12             THE COURT:  All right.  Let's go with the 9th.  And

13   I guess the question is, if we set pretrial deadlines so that

14   they're not all coming due in the middle of anticipated

15   vacation, that would be the way, I think, would probably work

16   the best.

17             Okay.  So as we sit here -- and I really do try to

18   let people have preplanned vacations and not have those go

19   away.  So as we sit here right now, are people out of town

20   August -- the week of August 22nd or week of September 2nd?

21             MR. GEORGE:  The week of -- I have Monday,

22   August 26th.  I know multiple members of the government team

23   will be out that last week of August.  Let me check the week

24   before, if you give me one moment.

25             Yeah, we do have some of us out the week before,

1    also, but --

2              THE COURT:  So if we -- and the week of --

3    September 2nd is Labor Day.  If we were to have our final

4    pretrial conference the week of the 2nd but have all the

5    filings, pretrial filings due prior to those vacation dates,

6    how does that work for everyone?  Other than it meaning

7    you're disclosing things earlier than you would otherwise,

8    but --

9              MR. GEORGE:  I think that works for us, Your Honor.

10              THE COURT:  Okay.  So I'll work a scheduling --

11    I'll set a scheduling order with a final pretrial -- well,

12    actually, Ms. Marchione, can you give us a date for the week

13    of September 2nd for a final pretrial?

14              THE DEPUTY CLERK:  Yes, Your Honor.  We can do --

15    we could do pretty much any day, Your Honor.  We can do

16    three o'clock on the 4th, the 5th, or we can do 2:30 on the

17    6th.

18              THE COURT:  Let's do three o'clock on the 4th of

19    September for a final pretrial, and then I'll get a

20    scheduling order out that has filings in by August 16th.

21    Does that work for everyone?

22              MR. GEORGE:  Yes.  Thank you, Your Honor.

23              THE COURT:  Okay.  Now, you said there's -- I'm

24    sorry; did we get everybody there?  I wasn't patiently

25    waiting.

```
 1              MR. FICK:  I believe so.

 2              THE COURT:  Okay.  You said that you're

 3    anticipating other motion practice.  What am I -- what are we

 4    looking at?

 5              MR. POLLACK:  I'll speak, Your Honor.

 6              We expect to have dispositive motions on some of

 7    the counts; in particular, money laundering.  I think

 8    Mr. Solomon is probably taking the lead on that, if

 9    Your Honor wants to hear some of the substance.

10              With regard to the anti-kickback statute charges,

11    we expect either a dispositive motion or a precursor to that,

12    and we haven't finalized the motions yet.  We were hoping to

13    have a date.  I think with the schedule we have now towards

14    trial, we were hoping to have something towards the end of

15    January as our deadline for the motions.

16              We have holidays, and I have two matters that have

17    created, at least for me -- obviously, other people can work

18    on some of it, but I have an extraordinary schedule over the

19    past -- over the next month or so that makes it difficult to

20    really get going on this until January for me.

21              THE COURT:  Okay.  So I don't want the substance of

22    the motions, particularly, now; but if we set a final date

23    for all dispositive motions by January 26th, any problem with

24    meeting that?

25              MR. POLLACK:  That's perfect for me, Your Honor.
```

1          THE COURT:  Okay.  And then how much time for

2     opposing?  You want to start with the two-week and then see

3     what they file?

4          MR. GEORGE:  I'm just looking at the calendar,

5     Your Honor.  One thing I have in mind is the school vacation

6     week in February.  Sorry.  I'm just pulling up my calendar.

7          THE COURT:  That's, I think, early this year.

8          MR. SOLOMON:  It's February 17th this year.

9          MR. GEORGE:  Yes.  So if we could have maybe till

10    February 16th?

11         THE COURT:  That's fine.

12         MR. GEORGE:  That will give us three weeks.

13         MR. SOLOMON:  The only issue I would have with that

14    is a reply, Your Honor, because I will be away on the week of

15    school break, so --

16         THE COURT:  So I don't allow a reply as a matter of

17    course, so let's set this with the February 16th date.  I

18    encourage everyone to try to figure out your arguments before

19    all the briefing is done.

20         I actually think that Rule 7.1 from the civil side

21    does still apply here.  It's -- all the rules.  And so my

22    hope is that there's conferring, you understand each other's

23    arguments before you file, and I don't have to read a reply

24    brief.  But I will -- you know, if it comes in and it appears

25    that a reply brief is necessary, you're welcome to ask for

1   leave.  And I understand that that's school vacation week.

2   We'll get it after that.

3          But my preference is, really, that you try to do

4   some of the argument, the -- understanding each other's

5   arguments in advance rather than afterward.

6          MR. SOLOMON:  Understood.  Thank you, Your Honor.

7          THE COURT:  Anything else we need to -- oh, we need

8   to deal with time.

9          MR. GEORGE:  Your Honor --

10         THE COURT:  Time is excluded through today.

11         MR. GEORGE:  We have one other matter to address.

12         THE COURT:  Okay.

13         MR. GEORGE:  So there's the prospect of an

14  advice-of-counsel defense in this case, and we would request

15  that the Court set a deadline prior to pretrial conference

16  that the defendants make an election as to whether they're

17  going to raise that defense or not.  Our suggestion is at

18  least 60 days out from the pretrial conference.

19         MR. POLLACK:  Your Honor, some of our briefing may

20  touch on this, but -- in the motion practice we anticipate --

21  but this is not a case where you'd have traditional reliance

22  on counsel like in a securities fraud case and attempting to

23  meet an affirmative defense of good faith.  The government

24  has a specific intent burden here to prove, and the

25  presentation of counsel is more of a wide-open issue.

1          So we don't think -- I think the briefing -- maybe

2     the government should do a motion on this if the government

3     believes that there needs to be some sort of a deadline,

4     should be some sort of a deadline in these types of -- there

5     are different types of specific intent cases, obviously.

6          But if the government -- and we've exchanged some

7     communications on this issue.  We asked the government

8     whether it agreed on the specific intent of an intentional

9     violation of a known legal duty, and they refused to answer.

10    They said it's not an appropriate request for discovery.

11         I hope that with Your Honor's encouragement, we can

12    now confer on that issue to learn more about the government's

13    belief of what form of willfulness applies here.  And once we

14    understand whether the parties have a consensus or not on the

15    form of specific intent that's at issue, we'd be in a

16    position to make our best argument about whether reliance on

17    counsel is really subsumed in the government's burden to

18    prove mens rea, or whether it's some type of an affirmative

19    defense.

20         But until they let us know what their position is

21    on specific intent, we can't even make that assessment.  And

22    it would be unfair to require the defendants to try to guess

23    at what the government's theory of their burden is.

24         MR. GEORGE:  Your Honor, if I can respond, I think

25    the burden on the government is to prove a violation of the

1   anti-kickback statute or a conspiracy to violate the AKS.

2   And what willfulness is under the AKS is well established.

3   The First Circuit case in *Bay State Ambulance* handles that.

4   Your Honor has ruled on that in cases.

5        So we're not refusing to answer.  It's just the

6   defendants asked us for, essentially, a jury instruction

7   three days ago, when we're months away from trial.

8        So to the extent that the defendants want to prove

9   that they acted in good faith, whether either -- excuse me --

10  through advice of counsel or presence of counsel or an advice

11  of counsel light, that burden is plainly on them.  And if

12  they want to prove a presence-of-counsel defense, we think

13  they should be -- that they should let the Court and the

14  government know at least 60 days before trial.  That's common

15  practice.

16        MR. POLLACK:  Your Honor?

17        THE COURT:  Yes.

18        MR. POLLACK:  May I, please, respond?

19        So the last three courts that have addressed this

20  issue directly -- it's the Second Circuit and two other lower

21  courts in the Second Circuit -- have all said that the

22  willfulness standard is the intentional violation of a known

23  legal duty standard.

24        I don't believe that issue has been actually

25  litigated and resolved in the First Circuit.  As the

1     government is saying, basically, it just thinks it has to

2     prove "willfully."  We all know there are different

3     definitions of "willful" depending on the applicable statute.

4     And at this point, we do not understand that we have the

5     burden to prove good faith.

6              We have the ability to obtain an acquittal by a

7     jury finding reasonable doubt that our clients acted with

8     willfulness and possibly the --

9              THE COURT:  So let me just sort of short-circuit

10    the discussion a little bit and let you know how I sort of

11    think about sort of the structure of a case overall.

12             I think the -- we talk about what the law is that

13    applies to a case at different times, right?  When people

14    test the sufficiency of the indictment originally, when you

15    are asking for jury instructions, when you're asking for a

16    new trial at all of these different stages, people are

17    talking about the law.

18             My view of it is the law should be the same all the

19    way through.  And so early -- if you understand how I will

20    view your disputes on the jury instructions, that would be

21    informative on all of this.

22             And so, Mr. George, to say that, well, that's a

23    jury instruction, we don't need to get to it yet, is accurate

24    in terms of the timing of the orders; but in terms of a way

25    to tee up what the dispute really is, it's -- you know, it is

1   sort of one way to try to figure out where we are.

2           And rather than, you know, as both on the civil

3   side and on the criminal side, everyone has disputes about

4   whether there's some certain discovery or whether -- whose

5   burden it is to disclose what, but to some degree, the

6   fundamental question is going to be who has to prove what at

7   the end of the day.

8           So I'm happy to try to have that question teed up

9   earlier and then we can figure out the schedule, because

10  rather than saying here's the schedule to do it, which is,

11  essentially, saying I'm agreeing with you, Mr. George, on the

12  legal issue, which right now as I sit here, I certainly don't

13  know one way or another.  I haven't thought about it this

14  morning, and whatever I thought about yesterday, I don't

15  particularly remember.

16          So I would suggest that you confer with each other.

17  I don't -- you know, obviously, the defense's stance --

18  guards very hard what they don't have to show or do have to

19  show; but I see no reasons for us not to figure out what the

20  legal issues are.

21          So my suggestion would be that you confer with each

22  other and give me a proposal after you confer with each other

23  of a way to tee this up, which isn't to say here's the date

24  to disclose, but here's the date to -- one side or the other

25  will file something, whether it's a proposed jury instruction

1    or whether it's a legal brief on the legal elements.

2              I don't have a strong view which way to do it.  I

3    just have a strong view that we have to get in front of the

4    legal issue, and then the rest should hopefully follow from

5    that.

6              MR. GEORGE:  Your Honor, I understand that.  That

7    makes sense.  We will confer.  And we'll file -- we'll file a

8    motion, if need be, if we don't get anywhere with the confer.

9              MR. POLLACK:  Thank you, Your Honor.

10             THE COURT:  Would you like to set another status

11   conference so that we can just sort of make sure where we are

12   with these dates, or would you just like to do it by motion?

13   And I'm indifferent.

14             MR. GEORGE:  I think it would be helpful,

15   Your Honor, to set another hearing maybe in two to three

16   months.  And I think it -- you know, at the very least, we --

17   there's no reason we can't deal with the issue we were just

18   discussing, at a minimum.

19             THE COURT:  Okay.  So why don't we set something in

20   January, and just another status or -- I guess it's

21   technically a further pretrial conference, whatever you want

22   to label it.  Give us something in January.

23             THE DEPUTY CLERK:  Yes, Your Honor.  I'm looking at

24   your January schedule.  We can do an interim pretrial

25   conference on Friday, January 12th, at 2:45.

1          MR. GEORGE:  That works for the --

2          THE COURT:  Does that work for everyone?

3          MR. GEORGE:  I'm sorry.  Yeah.  Mr. Looney and

4   Mr. Callahan have trials then.  So maybe later in January or

5   when --

6          THE COURT:  The following week, maybe?

7          MR. LOONEY:  We both have different trials starting

8   January 8th that may go into that second week.  So if we

9   could do the third week in -- the third week after

10  January 8th --

11         MR. POLLACK:  Your Honor?

12         MR. LOONEY:  -- the week of the 22nd.

13         MR. POLLACK:  Would it make sense for this to

14  happen at least after we file our initial motion since there

15  may be multiple issues that can be discussed?  I mean, we

16  wouldn't have a resolution of the motion, but it might help

17  illuminate some of these issues.

18         I mean, obviously, I didn't ask Mr. George for a

19  jury instruction.  I don't think he meant to say literally I

20  asked for a jury instruction.  There are issues concerning --

21  remember, it's not just individuals named here.

22  SpineFrontier, Inc., is named, and there are lawyers who have

23  worked for SpineFrontier, Inc.  So this is a little bit

24  different than the traditional sense.  And it might actually

25  help inform a status conference for them to see the fruits of

1    our motion first.

2            I wouldn't expect Your Honor to be taking that on,

3    but it might actually make it -- instead of coming in and

4    saying, hey, in a week they're going to see this, in

5    fairness -- or we can put it off until they've opposed --

6            THE COURT:  No, I don't want to do a mini hearing

7    on the motion before I have a hearing on the motion, because

8    I -- you know, it's very inefficient for me to be sort of

9    dipping in and out that way.

10            I guess what I would do, what I would say,

11   Mr. Pollack, is that I'm very serious about the 7.1

12   conferences being a good chance to sort of talk through

13   things, and you will have done that in advance of your

14   filing.

15            And so in that mode, when you are having

16   discussions about all of that, I think that's a perfectly

17   fine time to have our status conference rather than waiting

18   until they've seen your final product and are going to be

19   chomping at the bit to respond to --

20            MR. POLLACK:  Well, so maybe I sort of misphrased

21   which way to do this, but I think I heard Mr. George say that

22   he was -- to the extent they're asking for a deadline, they

23   do expect it to be later anyway.  It may make sense to

24   discuss this reliance-on-counsel issue along with the motions

25   that we're filing in January.  So maybe -- because I do think

1    you're going to hear from us all sorts of things on that that

2    relate to our motions.

3            So it might make sense to do it all at once,

4    whether it's in March, but I think we'd come in in January

5    about this reliance on counsel saying some of what I'm saying

6    now and say that our motions impact that issue.  So would it

7    make sense to --

8            THE COURT:  Okay.  Where I think I don't want to be

9    is in the position where I get your briefings, and you're

10   asking me to sort of resolve everything you've put forward in

11   your substantive motions to dismiss in order to set a

12   schedule for how we're going to tee up the next issue.  I'm

13   concerned about how far in.

14           So let's do this.  Let's go with a status

15   conference in January.  If in January you've convinced each

16   other that it would be better for me to address this issue

17   later, you know, maybe it'll be an easy answer.  And if not,

18   maybe you'll say your points, and I may say, you know what?

19   I still can't figure this out until I read your papers, or

20   maybe I will be able to.  But let's just go ahead and have a

21   status conference and have you have discussions with each

22   other by then so we are doing --

23           You know, and, really, I think the way to -- I

24   am -- I really appreciate it when lawyers think creatively

25   about how do we tee up issues efficiently.  That's -- I don't

1    want to stop anyone from being heard on an issue, and I don't

2    want to, you know, try to create havoc as we're going

3    through.

4           But I do feel like sometimes, you know, people do

5    things always in the same order; and you say, well, we don't

6    have to do this until this point, and we don't have to do

7    this until this point.  But there are fundamental issues

8    that, if we could resolve them, the sooner we -- the sooner

9    you have my understanding of the legal requirements here, the

10   sooner everyone can be working efficiently towards their

11   case.

12          I mean, what you don't want and what's, you know, a

13   waste of everybody's time is we get all the way through, and

14   I'm telling you after you've assumed I'm going to come down

15   one way, at the end of the day, I say, you know what?  I

16   really think it's something slightly different than that.

17          So to the extent we can get the legal issue teed up

18   and then from that figure out what that means in terms of

19   does this have to be disclosed, when does it have to be

20   disclosed, does it not have to be disclosed, et cetera, I

21   just think that's -- that would be helpful.

22          And so that's really all I'm -- and, I mean, if

23   what you come down to is you say -- which I think is what

24   you're saying, Mr. Pollack, is that this depends on whether I

25   agree with at least on part of your argument, not the

1    entirety of your anticipated argument, but if I agree with at

2    least part of it, that that might make a difference in terms

3    of the schedule.

4            And that may be, but let's just go ahead and try to

5    see if we can move it efficiently and have a conference in

6    January while your heads are in this material, at least from

7    the defendants' side.  I mean, the government may not be

8    thinking about this too much in January, but at least from

9    the defendants' side, you will have been thinking about it,

10   and see if we can come up with a proposal for what's the

11   efficient way to move forward on this question.

12           MR. POLLACK:  Thank you, Your Honor.  I think

13   having done this as long as I have, I sometimes am just

14   trying to think how might I be criticized.  And in January, I

15   didn't want to be in a situation where you might ask why are

16   we having this conference if you were just going to come back

17   and say we can't rule on this until after the briefing?

18           So I understand.  Maybe we'll be in a different

19   position based on a more extensive give-and-take than what

20   I've had with Mr. George so far so that we understand what

21   standards everybody's operating on, and maybe that's going to

22   make this issue either more complicated, less complicated.

23   And so I'll certainly make myself available.

24           My schedule is tight, but it's not so tight that I

25   can't meet and confer.  It's harder to work on motion

1    practice.  So I'll be available to confer with him and try to
2    work through this.
3            THE COURT:  So, Ms. Marchione, did we get a date
4    there or not?
5            THE DEPUTY CLERK:  Your Honor, you have a very
6    tight schedule in January.  You have sentencings most
7    afternoons, and you're in trial most mornings.  But I do have
8    the 29th of January, which is a Monday, at 2:45.
9            THE COURT:  Let's go with it.
10           MR. GEORGE:  Thank you.
11           THE COURT:  Okay.  I take it that, with a joint
12   request for a September date, I will also have an unopposed
13   motion to exclude time until then?
14           MR. SOLOMON:  Yes, Your Honor.
15           MR. LOONEY:  We'll file a motion.
16           MR. POLLACK:  Yes, Your Honor.
17           My cursor keeps flying past the "mute" and
18   "unmute."  I keep trying to hit it, and it flies past it for
19   some reason today.  All right.  Sorry.
20           Sure.  There's an agreement.
21           THE COURT:  Okay.  So the government will file
22   something.  I will appreciate that.
23           MR. GEORGE:  Yes, Your Honor.
24           THE COURT:  Okay.  Anything else we need to address
25   today?

1          MR. FICK:  I don't believe so.

2          MR. GEORGE:  Not from the government.

3          MR. FICK:  Not for the defense.

4          THE COURT:  Okay.  Thank you very much.

5          MR. SOLOMON:  Thank you, Your Honor.

6          MR. GEORGE:  Thank you, Your Honor.

7          THE COURT:  See you in the new year.

8          THE DEPUTY CLERK:  We are in recess.

9          (Court in recess at 10:29 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

1

2

3

4              I, Robert W. Paschal, Registered Merit Reporter and

5      Certified Realtime Reporter, in and for the United States

6      District Court for the District of Massachusetts, do hereby

7      certify that pursuant to Section 753, Title 28, United States

8      Code, the foregoing pages are a true and correct transcript

9      of the stenographically reported proceedings held in the

10     above-entitled matter and that the transcript page format is

11     in conformance with the regulations of the Judicial

12     Conference of the United States.

13

14                          Dated this 11th day of January, 2024.

15

16

17

18

19                          /s/ Robert W. Paschal

20                          _____

21                          ROBERT W. PASCHAL, RMR, CRR
                            Official Court Reporter

22

23

24

25