UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * |
| | * |
| KINGSLEY R. CHIN and ADITYA HUMAD, | * Criminal Action No. 1:21-cr-10256-IT |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

February 18, 2025

TALWANI, D.J.

Pending before the court is Defendants Kingsley Chin and Aditya Humad's Motion to Reconsider the Court's June 7, 2024 Order Re: Attorney-Client Privilege and Potential Trial Defenses ("Motion for Reconsideration") [Doc. No. 191]. For the following reasons, the Motion for Reconsideration is GRANTED in part and DENIED in part.

I.   Background

In the underlying Motion for a Finding of Waiver of the Attorney-Client Privilege [Doc. No. 152], the government sought an immediate finding that SpineFrontier, Inc. ("SpineFrontier"),[1] and its affiliated entity Impartial Medical Experts ("IME"), had waived the attorney-client privilege as to the subject matter of opinion letters that SpineFrontier and IME obtained from an outside law firm, Strong & Hanni. In the alternative, the government sought an order requiring Defendants to provide 60 days' notice of their decision to raise the advice or

---

[1] SpineFrontier was named in the Indictment [Doc. No. 1] and was still a defendant when the government filed the underlying Motion [Doc. No. 152] and Defendants filed the instant Motion for Reconsideration [Doc. No. 191]. The government has recently dismissed the charges against SpineFrontier. See Gov't Mot. to Dismiss [Doc. No. 225]; Elec. Order [Doc. No. 226].

involvement of counsel as a defense. See Gov't Mem. ISO Mot. for Waiver at 1-2 [Doc. No. 153].

In the June 7, 2024 Memorandum and Order [Doc. No. 179] denying both requests, the court explained that the Defendants' pre-indictment, extrajudicial disclosures of opinion letters from counsel were not a sufficient basis for inferring a waiver of privilege as to communications regarding the subject matter of those letters and that Defendants had not yet made the opinion letters an issue in this ongoing litigation. See Mem. & Order at 4 [Doc. No 179]. The court recognized, however, that Defendants' argument or introduction of evidence of their attorneys' involvement to negate the *mens rea* the government must prove might provide a sufficient basis for inferring a waiver of privilege. Accordingly, although the court declined to require Defendants to give early notice of their decision to raise an advice- or involvement-of-counsel defense, see id. at 6, the court cautioned Defendants that introducing evidence of their attorneys' involvement to raise an exculpatory inference as to Defendants' *mens rea* could serve as a waiver of attorney-client privilege, as defendants are not permitted to use privilege as both a shield and a sword by placing protected information in issue for the defendants' benefit while nevertheless seeking protection of the privilege. See id. at 3-5.

In the context of that warning, the court addressed Defendants' specific suggestion that they might use the role and presence of their own lawyers, including SpineFrontier's General Counsel, Associate General Counsel, and outside counsel, see Defs.' Opp'n at 15-16 [Doc. No. 155], to raise an exculpatory inference as to *mens rea*:

> To the extent that Defendants seek to draw an exculpatory inference based only on the presence or involvement of other persons (without regard to their professions), there would not be a waiver of attorney-client privilege. See id. at 17 (and cases cited therein). But if Defendants point out to the jury not only "the presence of many innocent bystanders, but [the] many lawyers 'in the room,'" id. (emphasis added), either the jury will be instructed that no exculpatory inference

2

<u>may be drawn from the fact that those individuals were lawyers, or the attorney-client privilege will be deemed waived</u>.

See Mem. & Order at 5 n.1 [Doc. No. 179] (emphasis added).

Though the court denied the government's request that Defendants be ordered to provide 60 days' pretrial notice of an intent to raise an advice- or involvement-of-counsel argument, see id. at 6, in an effort to balance the interests of the parties, the court ordered that the government would be permitted to serve subpoenas concerning SpineFrontier/IME's communications with Strong & Hanni and its attorneys related to the subject matter of the opinion letters, that Defendants or the subpoenaed party would be permitted to assert privilege but would be required to provide counsel a privilege log, and that responsive documents would be returnable to the deputy clerk for this session, with those allegedly privileged documents to be maintained under seal pending further court order, see id. at 6-7. The court ordered that if Defendants provided notice of their intent to raise an advice/involvement-of-counsel defense at the time their other disclosures were due, or during the course of trial, the court would refer review of any sealed documents to the magistrate judge for *in camera* review, unseal documents relating to the subject matter of the letters, and order them produced to the government. See id. at 7.

In their pending Motion for Reconsideration [Doc. No. 191], Defendants seek reconsideration of the statement regarding "lawyers in the room" quoted above. Defendants argue that: (1) pointing to a lawyers' presence at an alleged crime scene and suggesting an exculpatory inference does not waive attorney-client privilege; and (2) SpineFrontier controls the relevant privilege and thus Chin and Humad cannot waive this privilege or compel SpineFrontier to forfeit the privilege. Defendants also object that the procedures suggested by this court for resolving privilege issues are impracticable.

3

**II.     Standard of Review**

"[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (citing Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n. 2 (1st Cir. 2005)). Pointing to no newly discovered evidence or intervening change in the law, Defendants argue only that the interests of justice warrant reconsideration of this court's decision. See Mot. for Reconsideration at 2 [Doc. No. 191].

**III.    Discussion**

    A.    *The Court's Warning Does Not Apply to References to Lawyers Whose Communications with Defendants Are Not Protected by the Attorney-Client Privilege and Is Directed to References Made to Rebut* Mens Rea.

Defendants point out that the lawyers "in the room" include "lawyers for the surgeon-consultants at issue, who helped negotiate the consulting agreements and reviewed the structure of those relationships." See Mot. for Reconsideration at 5 [Doc. No. 191]. If Defendants are not claiming that their communications with those lawyers are protected by the attorney-client privilege, there is no concern about misleading the jury by incomplete evidence (and no attorney-client privilege to waive). To avoid any confusion here, the court clarifies that its earlier statement only concerns lawyers as to whom Defendants are asserting an attorney-client privilege.

The court's reference to pointing to lawyers "in the room" was also made in a specific context, namely, where Defendants are pointing to the lawyers to rebut *mens rea.* To the extent that lawyers' presence is being highlighted only for a purpose not related to *mens rea*, the warning does not apply.

4

B.  *Defendants' Request to Use "Lawyers in the Room" to Rebut Mens Rea*

Whether a Defendants' reference to the advice of or involvement with counsel triggers a waiver of attorney-client privilege depends on the facts and circumstances of each case. The basic touchstone for making that determination is fairness. See United States v. Gorski, 36 F. Supp. 3d 256, 268 (D. Mass. 2014).

Defendants argue that a person would not have engaged in "a brazen bribery scheme with lawyers watching, for the same common-sense reason that a person would be less likely to commit a serious crime in the presence of his mother, minister, or member of law enforcement, regardless of whether the person ever discussed his conduct with any bystander, much less solicited advice about it." See Mot. for Reconsideration at 7 [Doc. No. 191]. As this court previously stated, Defendants are free to refer to the presence of other individuals in the room, without regard to their professions, without waiving privilege. And as the court has clarified, Defendants may also refer to the presence of lawyers with whom they are not asserting an attorney-client relationship, as there is no privilege to waive.

But Defendants wish to go further and refer to the presence of their own lawyers in the room while protecting their prior communications with the same lawyers. In Defendants' construct, the jury would be free to draw an inference that Defendants' lawyers sanctioned the conduct, thereby negating the necessary *mens rea*, without the government being permitted to ask those lawyers whether the lawyers' approval was based on a full disclosure of the facts by their clients. Allowing Defendants to make such a reference to their own lawyers in the room, while both preserving attorney-client privilege *and* allowing the jury to draw an exculpatory inference as to *mens rea*, risks misleading the jury.

In their Motion for Reconsideration, Defendants again argue that the presence of counsel could be exculpatory as to *mens rea* because "lay people [on a jury] would naturally expect that a

5

lawyer would be more likely to spot potential legal misconduct and may be more inclined to stop it or report it." Id. But this argument does not address the main prejudice at issue—that without permitting cross-examination about the communications between the Defendants and those lawyers, there is a very real risk that the jury will make exactly the inference Defendants request, when the true facts may be that the lawyers' failure to spot potential misconduct was the result of inaccurate or incomplete information provided by the Defendants to the lawyers or of some similar reason.

Neither side has cited binding authority addressing this issue. Defendants rely on United States v. White, in which the D.C. Circuit held that a criminal defendant's attorney-client privilege could not be waived by defending on the ground of lack of criminal intent. 887 F.2d 267, 270 (D.C. Cir. 1989). The court in White was rightly concerned by the district court's suggestion that a criminal defendant could be found to waive privilege merely by "put[ting] the government to its proof on" *mens rea*. Id. Noting that White "mentioned that [his attorney] and others were present [at a meeting with White's co-defendant]," the D.C. Circuit stated that "acknowledgement that one's attorney was present during a conversation is not equivalent to affirmative reliance on his advice that one's action is legal." Id. The court also noted, however, that White "carefully refrained from relying on any statements of counsel"; instead, his defense was that he believed the arrangement was legal because his co-defendant claimed to have obtained permission from his superiors to engage in the transaction. Id.

Thus, unlike Defendants here, White was not seeking to use the lawyer's presence to draw an exculpatory inference as to *mens rea* or, more specifically, to show that a "lawyer would be more likely to spot potential legal misconduct and may be more inclined to stop it or report it." If Defendants make such a suggestion, then depending on the exact circumstances, the

6

government should be able to inquire into potentially inculpatory attorney-client communications or, at a minimum, the court will instruct the jury that no exculpatory inference may be drawn from the fact that those individuals were lawyers.

The district court in White had also concluded that a co-defendant's introduction of a non-privileged communication at a morning meeting "opened the door" to the introduction of privileged communications between the attorney and White that took place later that afternoon. Id. at 269. The Court of Appeals rejected that suggestion, explaining that "[t]he prosecution may not gain, through the device of a joint trial, admission against one defendant of otherwise inadmissible evidence on the happenstance that the door to admitting the evidence has been opened by a co-defendant." Id. at 270. But the Court of Appeals did not endorse the view endorsed by Defendants, namely, that evidence of a lawyer's presence or involvement should be permitted even at the risk of misleading the jury. Instead, the Court of Appeals instructed that "[i]f the district court believed that the evidence of the morning conversation, while crucial to [the co-defendant's] defense, would mislead the jury in White's favor unless clarified by the later conversation, the court should have severed the trials." Id. at 270. Here, Chin and Humad have not suggested that their defenses or claims of attorney-client privilege would differ, such that severance of the trial would be appropriate, or that the evidence that they seek to introduce is so crucial that the court should allow it in without a waiver of the privilege, despite the potential misleading of the jury.[2]

---

[2] This court is similarly unpersuaded by Defendants' reliance on United States v. Gasparik, 141 F. Supp. 2d 361 (S.D.N.Y. 2001). In Gasparik, the court held that a criminal defendant had not waived attorney-client privilege by averring in his opening statement that he wanted to be "guided by his attorney" and "do things legally." Gasparik, 141 F. Supp. 2d at 371. But the court found no waiver of the attorney-client privilege where Gasparik's attorney had not referenced a particular conversation with the counsel and had only made a general statement. Here, depending

7

C. *Defendants' Claim that Only SpineFrontier May Waive the Privilege*

Defendants further argue that Chin and Humad cannot waive the attorney-client privilege as to communications with corporate counsel because SpineFrontier controls that privilege. See Mot. for Reconsideration at 8 [Doc. No. 191]. Defendants cite numerous cases stating that "[t]he privilege belongs solely to the client," see id. at 8, but such cases speak only to the fact that the client, rather than the attorney, can waive attorney-client privilege. The issue they do not address is whether the controlling officers of SpineFrontier, Defendants Chin and Humad,[3] can waive that privilege. Defendants seem to be suggesting that they should be permitted to refer to the presence of counsel to draw an exculpatory inference as to Chin's and Humad's *mens rea*, even as SpineFrontier continues to assert that communications between such counsel and SpineFrontier—many of which possibly took place through Chin and Humad—are privileged. Defendants cite no case law that would justify allowing Defendants Chin and Humad to use the corporate form as a shield in this way.

D. *Defendants' Claim That the Procedures Ordered by the Court Are Unfair or Unworkable*

Defendants argue that preventing them from addressing the presence of lawyers in the room unless they waive privilege would cause confusion and delay. See Mot. for Reconsideration at 10 [Doc. No. 191]. Defendants argue that the jury will "inevitably" hear

---

on what is said, the court may similarly find a stray remark in an opening statement does not warrant a waiver of the attorney-client privilege. But Defendants' attempt to use the attorneys' presence as a sword without inquiry into those attorney-client communications will not be permitted.

[3] See Business Entity Summary for SpineFrontier, Inc., SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS, https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=1i0C1SLmAxQ ef.oN4xaQpymXZOqemp5qGELFEGiPSig- (last accessed February 14, 2025).

about "the extensive involvement of legal counsel and compliance officers in the consulting program," which Defendants argue makes it unfair and unworkable for Defendants' attorney-client privilege to be waived if Defendants point out to the jury that "lawyers or compliance personnel participated in the activities[.]" Id.[4]

As a preliminary matter, Defendants' argument misconstrues what the court ordered; Defendants may reference attorneys in the room so long as Defendants do not seek to draw an exculpatory inference based only on their lawyers' presence or involvement. And as the court has now clarified, Defendants may seek to draw an exculpatory inference based on the presence of attorneys as to whom they are not claiming an attorney-client relationship. But as to those attorneys with whom they are claiming a privilege, the court will either instruct the jury that it may not draw an exculpatory inference from their presence, or deem the privilege waived.

Regardless, Defendants' argument about unworkability fails. Defendants state that "[p]resumably, at trial, the prosecution will seek to introduce" letters that Defendants allegedly obtained from the Strong & Hanni law firm concerning the legality of the consulting agreements with surgeons, see id., which the government previously argued the Defendants used "as a means to provide a veneer of legitimacy to their illegal kickback scheme." See Gov't Mem. ISO Mot. for Waiver at 1 [Doc. No. 153]. But the government's introduction of these letters would not waive Defendants' privilege and would not preclude Defendants from addressing these letters for purposes other than *mens rea*. The court addressed instead the possibility that "Defendants may seek to argue or introduce evidence of their attorneys' involvement to negate the *mens rea* the government must prove." See Mem. & Order at 5 [Doc. No. 179] (emphasis added). The court's

---

[4] Defendants have not elaborated on what privilege they contend applies regarding "compliance personnel" who are not attorneys.

9

caution to the Defendants was that they may waive the privilege or an instruction may be required if <u>Defendants</u> seek to use their attorneys' involvement to negate Defendants' *mens rea*. <u>See</u> <u>id.</u> at 4-6.

Defendants also point to Lesley Olson, former Associate General Counsel of SpineFrontier, whom the government interviewed as part of the investigation and who Defendants state "engaged in exculpatory non-privileged activity" related to, for instance, SpineFrontier's Sunshine Act disclosures. <u>See</u> Mot. for Reconsideration at 11-12 [Doc. No. 191]. Defendants leave ambiguous whether Defendants expect the government to introduce evidence of Olson's involvement or whether Defendants may do so themselves. Again, however, introduction of her non-privileged activity would not require a waiver of privilege or instruction to the jury unless Defendants are using her actions as a lawyer for the company to negate *mens rea* while simultaneously asserting a privilege as to the communications informing those activities.[5]

## IV.   Conclusion

For the foregoing reasons, Defendant's <u>Motion to Reconsider the Court's June 7, 2024 Order Re: Attorney-Client Privilege and Potential Trial Defenses</u> [Doc. No. 191] is GRANTED in part and DENIED in part. The court has clarified that its warning does not concern lawyers as to whom the Defendants are not asserting an attorney-client privilege, and that the warning concerns Defendants' references to lawyers for the purpose of rebutting *mens rea*. If Defendants

---

[5] Defendants also raised concerns that the government had not yet subpoenaed certain communications. <u>See</u> Mot. for Reconsideration at 2-3 [Doc. No. 191]. As set forth in an October 10, 2024 letter copied to counsel, Strong & Hanni has responded to the government's subpoena and sent documents to the court, <u>see</u> Strong & Hanni and Peter J. Baxter's Response to Subpoena [Doc. No. 222], where they remain under seal.

point out to the jury the presence of lawyers "in the room" to draw such an exculpatory inference then, depending on the circumstances, either the jury will be instructed that no exculpatory inference may be drawn as to Defendants' *mens rea* from the fact that those individuals were lawyers, or the attorney-client privilege will be deemed waived.

    IT IS SO ORDERED.

February 18, 2025                          /s/ Indira Talwani
                                                   United States District Judge