IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>KINGSLEY R. CHIN and<br>ADITYA HUMAD,<br>     *Defendants*. | No. 1:21-cr-10256-IT |

**DEFENDANTS' MOTION TO PLAY COURT-DEVELOPED EDUCATIONAL VIDEO
CONCERNING UNCONSCIOUS BIAS TO PROSPECTIVE JURORS**

Defendants, Kingsley Chin and Aditya Humad, respectfully request that, prior to the

empanelment process, prospective jurors in this case be shown an 11-minute educational video

concerning unconscious or "implicit" bias that was developed for use in jury selection by the

United States District Court for the Western District of Washington, available at this link:

https://www.wawd.uscourts.gov/jury/unconscious-bias[1]

The government opposes this motion.

As grounds for this motion, defendants state:

1.      Dr. Chin and Mr. Humad are both persons of color and are both immigrants to

this country. Dr. Chin was born and raised in Jamaica while Mr. Humad was born to parents

from India and was raised in Kuwait. The Court should play the requested video to mitigate the

---

[1] On request, defendants can provide a copy to the Court on DVD or other media. An authorized
representative of the United States District Court for the Western District of Washington
provided the undersigned counsel for Mr. Humad with written "permission now and at any time
in the future to use our Unconscious Bias video for any purpose…." *United States v. Yu*, 19-cr-
10195-WGY, ECF No. 211-1.

risk that unconscious bias may influence juror decision-making.

2.      Multiple sessions of this Court have previously agreed to play this video for prospective jurors at the request of defendants. *See, e.g., United States v. Yu*, No. 19-cr-10195-WGY, ECF No. 215; *United States v. Castro*, No. 19-cr-10363-LTS, ECF No. 236; *United States v. Omoruyi*, No. 21-cr-10217-PBS, ECF No. 153. In addition, undersigned counsel understand that Judge Mastroianni played the video to jurors *sua sponte* in *United States v. Bigda*, No. 18-cr-30051-MGM.

3.      Jury impartiality is a core requirement of the right to trial by jury enshrined in the U.S. Constitution. *See Morgan v. Illinois*, 504 U.S. 719, 727 (1992) ("[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." (internal citations omitted)). The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an *impartial jury* of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI (emphasis added). An impartial jury is one that has not formed an opinion prior to hearing and assessing all the evidence, and one that bases its decision only on the assessment of evidence not on pre-formed conclusions and biases. *See Morgan*, 504 U.S. at 727.

4.      Even thorough voir dire offers the prospect of identifying and disqualifying prospective jurors who candidly acknowledge their biases, and even though the Court may instruct the jurors to act without bias, the problem of *implicit* bias will remain.

5.      "Implicit bias" is a term of art referring to the formation of opinions based on "relatively unconscious and relatively automatic features of prejudiced judgment and social

behavior." *See* Brownstein, Michael, "Implicit Bias," *The Stanford Encyclopedia of Philosophy* (Spring 2017 Edition), Edward N. Zalta (ed.).[2] In other words, implicit bias draws conclusions based on pre-formed opinions rather than the evidence presented. In terms of juror impartiality, "[t]he theory of the law is that a juror who has formed an opinion cannot be impartial." *Morgan*, 504 U.S. at 727 (internal citation omitted). Thus, drawing any conclusion about a defendant or case on the basis of "implicit bias" would contravene the core principle of impartiality of the Sixth Amendment.

6.      The research group Perception Institute[3] offers the following definition of "implicit bias" in the context of race and ethnicity:

> Thoughts and feelings are "implicit" if we are unaware of them or mistaken about their nature. We have a bias when, rather than being neutral, we have a preference for (or aversion to) a person or group of people. Thus, we use the term "implicit bias" to describe when we have attitudes towards people or associate stereotypes with them without our conscious knowledge. A fairly commonplace example of this is seen in studies that show that white people will frequently associate criminality with black people without even realizing they're doing it.[4]

The Sixth Circuit has explained the concept this way:

> The concept of "implicit bias" is defined, generally, as bias that is "not necessarily openly and explicitly expressed, but [is] harbored nonetheless." Implicit biases are "often not conscious, intentional, or maliciously-based," as opposed to explicit bias – generally

---

[2] Available at https://plato.stanford.edu/entries/implicit-bias.

[3] The Perception Institute is a national consortium of social scientists, law professors, and advocates focusing on the role of the mind sciences in law, policy, and institutional practices. Its cofounders are Alexis McGill Johnson, of Princeton and Yale Universities, and Rachel Godsil, of Seton Hall University School of Law, a renowned author and lecturer on issues of implicit bias and racial anxiety. *See* https://perception.org/about-us/team/.

[4] https://perception.org/research/implicit-bias .

defined as "bias that is openly expressed."

*United States v. Ray*, 803 F.3d 244, 260-61 (6th Cir. 2015) (citing Melissa L. Breger, *The (In)visibility of Motherhood in Family Court Proceedings*, 36 N.Y.U. Rev. L. & Soc. Change 555, 560 (2012)). Associate Justice Kenneth Desmond of the Massachusetts Appeals Court has said, "[i]n the most basic sense, implicit bias is 'thoughts about other people you didn't know you had.' Consequently, it is often difficult for individuals who do not fall victim to the impact of certain biases to identify the ways they are manifested." Hon. Kenneth V. Desmond, Jr., *The Road to Race and Implicit Bias Eradication*, Boston Bar J., Summer 2016, at 3.[5]

7.    A plethora of scholarly articles support the conclusion that implicit social bias poses a challenge to legal theory and practice, and to jury selection in particular, because unconscious bias can lead to erroneous assumptions that contravene the accused's Sixth Amendment right to a trial by an impartial jury. *See e.g., Ray*, 803 F.3d at 260–61 (collecting citations to scholarship).

8.    This emerging social science highlights something about which the courts have long been aware: that unconscious bias about race or ethnicity could affect the outcome of trials. *See Smith v. Phillips*, 455 U.S. 209, 221-222 (O'Connor, J., concurring) ("Determining whether a juror is biased or has prejudged a case is difficult because the juror may be … unaware of it."); *Georgia v. McCollum*, 505 U.S. 42, 68 (1992) (O'Connor, J., dissenting) ("It is by now clear that conscious and unconscious racism can affect the way white jurors perceive minority defendants and the facts presented at their trials, perhaps determining the verdict of guilt or innocence.").

---

[5]  Available at https://bostonbarjournal.com/2016/07/13/the-road-to-race-and-implicit-bias-eradication/.

Where voir dire and inquiry into bias and prejudice are required under the Fourteenth Amendment in certain cases, *see Ham v. South Carolina*, 409 U.S. 524, 527 (1973), and where implicit bias is inextricably linked to and rooted in pervasive and unconscious biases, so too does the Fourteenth Amendment demand voir dire and inquiry into prospective jurors' implicit biases, *see Pena-Rodriguez*, 137 S. Ct. at 868 (granting new trial where juror relied on racial stereotype and animus to convict the defendant, recognizing that "racial bias implicates unique historical, constitutional, and institutional concerns").

9.    Studies reflect that people can combat the effect of implicit biases if they are aware that unconscious associations can exist and consciously examine whether such associations may have played a role in their own decisions.[6] For this reason, one federal district court – the U.S. District Court for the Western District of Washington – actively educates all prospective jurors to do the same. That court does so by showing an 11-minute video as a routine part of juror orientation. The video explains what implicit biases are and instructs jurors to guard against drawing inferences or conclusions based on them by taking three simple steps: (1) being aware that implicit biases exist, (2) carefully examining their own decision-making process, and (3) asking whether their decision(s) would be different if the witness, lawyer, or person on trial were of a different race, age, or gender.

---

[6] *See, e.g.*, FJC, Hon. Jeremy D. Fogel, Director, *Mindfulness and Judging* (2016), *available at* https://fjc.dcn/content/345454/court-web-discussion-implicit-bias; *see also* E. Ingriselli. *Mitigating Jurors' Racial Biases: The Effects of Content and Timing of Jury Instructions*, 124 Yale L.J. 1690, 1729-30 (March 2015) (examining hypotheses for combatting racially driven decisions in jurors and concluding that "judges should include debiasing elements derived from [implicit bias] theory in their jury instructions and . . . they should present these instructions before the evidence phase of a trial" because "presenting instructions before evidence leads to lower biases").

Accordingly, Dr. Chin and Mr. Humad ask that this Court show the venire in this case the video created by the Western District of Washington.

Respectfully submitted,

**KINGSLEY CHIN**

By his attorneys,

/s/ *Joshua Solomon*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

**ADITYA HUMAD**

By his attorneys,

/s/ *William Fick*
Daniel N. Marx (BBO #674523)
William W. Fick (BBO #650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA    02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

**Local Rule 7.1(a)(2) Certification**

Defense counsel certify that they conferred in good faith with counsel for the government in an effort to resolve or narrow the issues described herein.

/s/   *William Fick*

**Certificate of Service**

I, William W. Fick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 18, 2025.

/s/ William W. Fick