**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES<br><br>v.<br><br>KINGSLEY R. CHIN and<br>ADITYA HUMAD,<br>       *Defendants*. | No. 1:21-cr-10256-IT |

**DEFENDANTS' OPPOSITION TO
PROSECUTION'S MOTION *IN LIMINE* RE: ADMISSIBILTY OF EMAILS [D.E. 248]**

      The prosecution has moved *in limine* to admit 14 emails (or email threads) that 9 different individuals (only 4 of which the prosecution plans to call as witnesses at trial) sent to various recipients over a period of more than 3 years. That motion should be denied, because at this pre-trial stage, the prosecution has failed to lay the required foundation to admit all of these out-of-court statements as "non-hearsay."

      The prosecution argues this Court should find that some of the emails are admissible under Fed. R. Evid. 801(d)(2)(D), because the senders—mostly former employees of SpineFrontier— were authorized "agents" of Defendants Kingsley Chin and Aditya Humad. *See* D.E. 248 at 7-10. That argument fails, because the prosecution dropped SpineFrontier from the case, *see* D.E. 225 (motion to dismiss all charges against SpineFrontier); D.E. 226 (order allowing motion), and the corporate organizational charts and email signature blocks, on which the prosecution heavily relies, do not establish any *personal* agency relationships between particular SpineFrontier employees and Dr. Chin or Mr. Humad as individuals. As the case law makes clear, "agent" statements may not be admitted as "non-hearsay" simply because the declarant worked at a company where the defendant was a senior executive. Read that broadly, as the prosecution

proposes, the "agent" exception would swallow the hearsay rule in white-collar prosecutions like this one.

Alternatively, the prosecution contends this Court should find that all the emails are admissible under Fed. R. Evid. 801(d)(2)(E), because the authors were unindicted "co-conspirators," and their statements were made "in furtherance of" the charged conspiracy. *See* D.E. 248 at 10-12. That argument also fails, because the prosecution has not identified the members of the charged conspiracy, much less laid the necessary foundation to establish that each declarant willfully entered any criminal agreement with Dr. Chin and Mr. Humad. In its automatic discovery letter at the start of this case, the prosecution conspicuously omitted two employee-declarants (Chantal Goldson and Frank Schnur) from its list of unindicted co-conspirators. Moreover, the prosecution never brought any substantive AKS charge concerning one doctor-declarant (Dr. Josue Gabriel), and it recently filed a motion to dismiss the substantive charge concerning another (Dr. Joseph Shehadi), *see* D.E. 267 (motion to dismiss Count 4), while committing not to present evidence that he was a co-conspirator.

## ARGUMENT

The prosecution moves *in limine* to admit more than a dozen emails (or email threads), arguing that these documents and all the out-of-courts statements that they contain constitute the personal "admissions" of Dr. Chin and Mr. Humad through their authorized "agents" or alleged "co-conspirators." The prosecution has failed, however, to lay the required foundation for the admission of these emails under Fed. R. Evid. 801(d)(2)(D) or (E), and the erroneous admission of these statements, including many by individuals whom the prosecution does not plan to call as witnesses at trial, would raise serious concerns of a constitutional magnitude, because "'hearsay rules and the Confrontation Clause are generally designed to protect them same values,'" and they

"'stem from the same roots.'" *Bourlaily v. United States*, 483 U.S. 171, 182-83 (1987) (quoting *California v. Green*, 399 U.S. 149, 155 (1970), and *Dutton v. Evans*, 400 U.S. 74, 86 (1970)) (holding "the requirements for admission under Rule 801(d)(2)(E) are identical to the requirements of the Confrontation Clause" and, thus, implying the erroneous admission of out-of-court statements under that rule would be "a constitutional problem"); *see, e.g.*, *United States v. Meises*, 645 F.3d 5, 19-25 (1st Cir. 2011) (vacating convictions and ordering new trial) (discussing Confrontation Clause and hearsay issues, holding "the tainted evidence was central to the prosecution's case and potentially disastrous to the appellants' defense," and emphasizing "'lawyers may not circumvent the Confrontation Clause by introducing the same substantive testimony in a different form'") (quoting *Ryan v. Miller*, 303 F.3d 231, 248 (2d Cir. 2002) (explaining confrontation rights are "separate from" but "intertwined with" hearsay rules)). In fact, "[t]he inability to cross-examine a declarant attains particular significance" when, as here, the prosecution seeks to admit out-of-court statements as "agent" or "co-conspirator" statements, because "declarations admitted under Rule 801(d) are defined out of the hearsay rule as a matter of estoppel, as opposed to being excepted from the rule as independently reliable statements." *United States v. Young*, 736 F.2d 565, 568 (10th Cir. 1983) (*per curiam*).

I.    **The prosecution has failed to establish that the proffered emails are admissible pursuant to Fed. R. Evid. 801(d)(2)(D) as personal admissions of Dr. Chin and Mr. Humad through their authorized "agents."**

The prosecution seeks to admit 7 emails from 5 former employees of SpineFrontier (Scott Autrey, Chantal Goldson, Dan Habbyshaw, Peter Prinos, and Frank Schnur), D.E. 248-14, 248-18, 248-22, 248-23, 248-24, 248-25, 248-26; and 4 emails from an employee of Impartial Medical Experts (Vanessa Dudley), D.E. 248-5, 248-19, 248-20, 248-21. It argues that all these emails (or entire threads) constitute the out-of-court statements of authorized "agents" for Dr. Chin and Mr. Humad that are admissible against both Defendants as their own personal "admissions." *See*

Fed. R. Evid. 801(d)(2)(D); *Sabel v. Mead Johnson & Co.*, 737 F. Supp. 135, 139 (D. Mass. 1990) (explaining that Rule 801(d)(2)(D) "expanded the traditional admissions exception to the hearsay rule to include statements made by agents on matters within the scope of their agency" on the assumption that an agent "authorized to act" for a principal is "impliedly authorized to speak" for the principal "on the same matters").

As the party seeking to introduce these out-of-court statements into evidence pursuant to Rule 801(d)(2)(D) at the joint trial of Dr. Chin and Mr. Humad, the prosecution bears the burden to establish, by a preponderance of the evidence, that (1) agency relationships existed between all the declarants and both Defendants; (2) the out-of-court statements were all made during the course of the agency relationships; and (3) the statements related to matters within the scope of their agency relationships. *See Gomez v. Rivera-Rodriguez*, 344 F.3d 103, 116 (1st Cir. 2003) (holding district court abused its discretion in failing to exclude supposed agent's testimony as hearsay); *see also, e.g.*, *United States v. Edwards*, No. 16-cr-20070-01/02-CM, 2019 U.S. Dist. LEXIS 179077, at *23 (D. Kan. Oct. 15, 2019) (denying prosecution's motion *in limine* and ruling that "proper admission of [declarant]'s statement . . . will depend on the government laying the proper foundation for the agency relationship between the [declarant] and the defendants").

Moreover, as the prosecution concedes, *see* D.E. 248 at 8, it must satisfy the burden to show that each agency relationship existed "by independent evidence *before* out-of-court statements by a purported agent can be deemed admissions by a party opponent." *Gomez*, 344 F.3d at 116 (emphasis added). Although trial courts have considerable discretion to make such evidentiary rulings, that discretion is "not boundless." *Id.* at 117. For the purposes of Rule 801(d)(2)(D), "the requisite foundation"—that is, sufficient proof of an actual agency relationship at the relevant time—"demands something more than intuitive judgments emanating from broad

4

generalities," because such generalizations are "no substitute for hard facts." *Id.*

To be clear, the prosecution does *not* seek to admit the statements of former employees of SpineFrontier *against SpineFrontier itself*. As this Court knows, the prosecution dismissed all charges against SpineFrontier as a corporate defendant, supposedly to "streamline" its case. D.E. 225 (motion); D.E. 226 (order). That decision has consequences: the prosecution may not admit the proffered emails as "admissions" of SpineFrontier or its corporate agents, because SpineFrontier is no longer a "party-opponent." *See* Fed. R. Evid. 801(d)(2)(D) (authorizing admission of evidence only if it "is offered against a party"). The prosecution can introduce these documents only if it proves by a preponderance of the evidence that the out-of-court statements are the personal "admissions" of Dr. Chin and Mr. Humad through their own authorized "agents."

As a general matter, in the corporate context, the statements of an out-of-court declarant may not be imputed, under Rule 801(d)(2)(D), to a party-opponent who is "merely the declarant's co-employee." *Lippay v. Christos*, 996 F.2d 1490, 1498 (3d Cir. 1993) (reversing judgment because district court erroneously admitted declarant's statements based on mere subordinate status and despite lack of "control" over declarant or statement at issue). Nor it is sufficient that a declarant is "subordinate to a party opponent" on a company's organizational chart. *Young*, 736 F.2d at 567. Rather the required relationship between an agent and his or her principal is "established only where the party-opponent personally 'directed [the declarant's] work," both on "*a continuing basis*" and with respect to the statement at issue. *Lippay*, 996 F.2d at 1498 (quoting *Boren v. Sable*, 887 F.2d 1032, 1041 (10th Cir. 1989)) (emphasis in original).

In other words, the trial court's decision whether to admit the statements of a corporate employee against a corporate officer (as opposed to the corporation itself) depends on the prosecution's proof regarding the functional relationship between the employee and the officer.

*See United States v. Agne*, 214 F.3d 47, 54-55 (1st Cir. 2000) (citing *Young*, 736 F.2d at 568). That is because "the admission of a statement by a corporate employee against his corporate superior rather than against the corporation itself 'may create a loophole in the hearsay rule through which evidence not contemplated by the authors of Rule 801 could be admitted.'" *United States v. Paxson*, 861 F.2d 730, 734 (D.C. Cir. 1988) (quoting *Young*, 736 F.2d at 567)); *see United States v. Wiedyk*, 71 F.3d 602, 605-07 (6th Cir. 1995) (holding trial court erroneously admitted statements under Rule 801(d)(2)(D), because evidence did not adequately establish agency relationship with defendant).

For example, in *Boren v. Sable*, 887 F.2d 1032 (10th Cir. 1989), Boren, a factory worker who injured his hand while cleaning a machine, sought to introduce the out-of-court statement of a co-worker against Sable, the president and chief executive officer of the company that owned the factory. Boren argued the testimony was admissible under Rule 801(d)(2)(D) against Sable, because the co-worker's position was "subordinate to that of the defendant." The Tenth Circuit rejected that formulistic argument, holding the declarant's "mere occupation of a subordinate position in the corporate chain of command" could not suffice to establish an "agency relationship" with the defendant. *Id.* at 1040. Rather, to admit the co-worker's statements as admissions of a party-opponent through his authorized agent, Boren would have had to demonstrate that Sable "controlled the daily performance of [the declarant] at the time he made the alleged 'admissions.'" *Id.* Because Boren failed to make that required showing, the out-of-court statements were inadmissible hearsay.

Here, the prosecution's haphazard and superficial approach to the proffered emails fails to establish the necessary agency relationships between each of the 6 declarants and both Defendants in their personal capacities and, instead, impermissibly relies on "broad generalities" about

SpineFrontier and IME and the many people who worked for those companies. It is not enough to assert that because Dr. Chin was SpineFrontier's CEO or because Mr. Humad was the company's CFO, all former employees of SpineFrontier and also IME served at all times as authorized "agents" of them personally, able to make personal "admissions" on their behalf for evidentiary purposes in a criminal prosecution. As in *Gomez*, "the absence of particular evidence" to satisfy the requirements of Rule 801(d)(2)(D) as to each proffered exhibit "dooms the [government]'s argument." 344 F.3d at 116.

As an initial matter, the prosecution has failed to show that the emails at issue were sent "during the course of the agency relationship[s]." *Id.* at 116; *see United States v. Petraia Mar. Ltd.*, 489 F. Supp. 2d 90 (D. Me. 2007) (denying motion *in limine* to admit statements by crew members and engineering officials because, at the times of the statements, they were not agents of the defendant vessel). The government's primary evidence consists of three charts that purport to describe, *as of July 1, 2016*, Dr. Chin's relationships to SpineFrontier and IME, his personal ownership interests in the two companies, and SpineFrontier's organizational structure. *See* D.E. 248-1. Those charts post-date all the emails by at least one year—and in some cases, more than three years. (The earliest email was sent by Prinos to Dr. Chin and Mr. Humad on March 12, 2013. *See* D.E. 248-25.) To state the obvious, evidence of ownership interests, direct supervisory authority, or general organizational structures in 2016 cannot establish what, if any, agency relationships may have existed with Dr. Chin or Mr. Humad personally in 2013, 2014, or 2015, when their supposed "agents" sent the proffered emails.[1]

---

[1]  Although the prosecution lumps together Dr. Chin and Mr. Humad throughout its motion, it does not provide any evidence, or even assert, that Mr. Humad had any ownership interest in SpineFrontier or IME at any time. Nor does it provide adequate evidence that all the employees reported directly to or were directly or continuously supervised by Dr. Chin or Mr. Humad. *See,*

Putting aside the date problem, the charts fall far short of providing sufficient evidence to establish specific agency relationships between all 6 declarants and both Defendants. The declarants broadly include a Chief Sales Officer (Frank Schnur), a territory sales manager (Peter Prinos), a senior sales representative who worked in Texas (Scott Autrey), a sale representative who worked in Ohio (Dan Habbyshaw), and a junior finance analyst (Chantal Goldson). The role of "chief sales officer" does not even appear on the organizational chart for SpineFrontier from 2016, and to the extent the chart includes the sales function as a single unit, it ambiguously draws a reporting line to the "CEO/CMO/CTO," and dotted reporting lines to the "CFO/President" and the COO, none of whom is identified by name. D.E. 248-1 at 4. As the prosecution's own exhibits reveal, as of 2014, when many of the proffered emails were sent, SpineFrontier had a Vice President of Sales, not a Chief Sales Officer, *see* D.E. 248 at 9; *id.* at 248-30, and that position does not appear on the chart from 2016, *see* D.E. 248-1. Meanwhile, the chart draws a reporting line from the finance function only to the "CFO/President," but not to the "CEO/CMO/CTO." *See id.* These charts leave many questions unanswered, but this much is clear: the anachronistic, overly general, functional reporting relationships that they appear to describe do not establish that any specific employee served as a personal authorized "agent" of any particular executive.

---

*e.g.*, D.E. 248 at 4 (describing "SpineFrontier, IME, and KIC Ventures" as "entities under Chin's ownership and control" and asserting "Humad acted with Chin on behalf of [those entities]"); *id.* at 8 (asserting "Chin owned and controlled SpineFrontier and IME" while "Humad was second-in-command at each of those entities"). The notion that SpineFrontier and IME were "nothing more than Chin's alter ego" and that, at the same time, "Humad r[an] all operations" for both companies, makes no sense. *Id.* at 10. Which was it? Both statements cannot be correct, and the prosecution's muddled discussion of both Defendants only highlights the need for this Court to carefully determine which proffered emails, if any, may be admissible at trial against each Defendant based on his particular interests and responsibilities. *See United States v. Chan*, No. 16-cr-10268-IT, 2018 U.S. Dist. LEXIS 105204, at *2-3 (D. Mass. June 23, 2018) (recognizing that prosecution's decision to proceed against two defendants at joint trial complicates evidentiary issues under hearsay rules).

Beyond these inadequate charts, the prosecution's additional evidence about the existence of agency relationships is remarkably weak. For example, it points to signature blocks on emails that list various formal titles for Dr. Chin and Mr. Humad with SpineFrontier. *See, e.g.*, D.E. 248-2 (identifying Dr. Chin as President, CEO, and CTO of SpineFrontier), 248-3 (identifying Mr. Humad as President and CFO of SpineFrontier), 248-4 (identifying Mr. Humad as Co-Founder and CFO of KIC Ventures, LLC, a different entity). Those email footers say nothing about the Defendants' job descriptions, their corporate responsibilities at SpineFrontier, or most importantly, their actual working relationships with other employees of the company.[2] Moreover, the fact that Dr. Chin and Mr. Humad, whatever their titles, interacted with other SpineFrontier employees to discuss company business is hardly surprising. Without more, that does not establish any agency relationship under common-law principles. Co-employees, even those in supervisory/subordinate roles, often work together and communicate, but only in special circumstances can one be deemed the legal agent of another.

The record regarding Vanessa Dudley, who worked for IME rather than SpineFrontier, is weaker still. Not surprisingly, the prosecution repeatedly emphasizes that Dudley is married to Dr. Chin, mentioning that irrelevant fact 4 times in 12 pages. *See* D.E. 248 at 2 ("Chin's wife"), *id.* at 6 (same), *id.* at 10 (same), *id.* at 12 (same). In *Gomez*, however, the First Circuit held: "The mere existence of a marital bond cannot serve as a proxy for competent proof of an agency relationship" for the purpose of Rule 801(d)(2)(D). *See* 344 F.3d at 117 ("[The declarant's] marriage to the Mayor, without more, does not demonstrate the formation of an agency relationship between

---

[2] In certain respects, the signature blocks also appear to be inaccurate; one email lists Dr. Chin as "President & CEO" of SpineFrontier, D.E. 248-2, while other identifies Mr. Humad as "President [and] Chief Financial Officer" of the same company. D.E. 248-3.

them."). The same is true for Dr. Chin. And of course, Dudley cannot be deemed Mr. Humad's authorized agent because she was Dr. Chin's wife.

Nor does the prosecution's baseless claim that IME was a "sham company" establish that Dudley, IME's business administrator, was an authorized "agent" of Dr. Chin or Mr. Humad. *See* D.E. 248 at 12; *see id.* at 7 ("sham entity"), *id.* at 10 ("total sham"). As its "evidence," the government points to IME's application for a post office box. *See* D.E. 248-6; *see* D.E. 248 at 2 (claiming IME had "no physical location" other than P.O. Box). But it is hardly inappropriate, much less illegal, for a small company to use a post office box as a mailing address. At trial, the legitimacy of IME will be a hotly disputed issue. In fact, it is not even clear at this point whether the prosecution intends to prove its "sham company" allegations, given that the prosecution has suggested it may vary its theory of the case (contrary to the allegations in the Indictment returned by the Grand Jury) to one that asserts only *certain* consulting relationships were illegal, without attempting to prove that the entire consulting program was a "sham." For present purposes, however, even if the prosecution could show IME was a "sham company," that would not prove Dudley was an authorized agent of Dr. Chin or Mr. Humad or that she could make personal "admissions" on behalf of either Defendant for the purpose of Rule 801(d)(2)(D). Regarding the evidentiary issue presented by the prosecution's motion *in limine*, the prosecution's point about the P.O. box, whatever its probative value, is a non sequitur.

The prosecution also relies, improperly, on Dudley's own statements in an effort to establish her supposed agency relationships to Dr. Chin and Mr. Humad. *See Gomez*, 344 F.3d at 116 (holding "independent evidence" must be presented "before out-of-court statements by a purported agent can be deemed admissions by a party opponent"). Aside from a handful of emails to and from Dudley, the prosecution cites no evidence in support of its central—but erroneous—

assertion that "Dudley at all times reported to Chin and Humad." D.E. 284 at 2. For example, in one proffered email, Dudley told an accountant at SpineFrontier that she did not have access to "IME's accounts" and that she thought "only Aditya and Kingsley do." D.E. 284-5. Neither Dudley's lack of access to bank accounts nor her belief about the Defendants (which may or may not have been correct) proves that both Defendants "directed" her work "on a continuing basis," *Boren*, 887 F.2d at 1041, or otherwise authorized her to speak for them personally in the out-of court communications at issue.

Ignoring the First Circuit's caution against drawing speculative inferences from "broad generalities," such as a declarant's "subordinate" position on a company's organizational chart or a defendant's corporate title, the government asks this Court to rule that, because Dr. Chin and Mr. Humad were senior executives at SpineFrontier (not IME), all the employees of both companies were authorized "agents" of both Defendants and could speak for them. That is not the law; indeed, on that basis, it would be error to admit emails as "non-hearsay" under Rule 801(d)(2)(D). Thus, this Court should deny prosecution's motion *in limine* without prejudice to the possible "reconsider[ation] of the admission of the evidence at trial should the government lay the proper foundation." *Edwards*, 2019 U.S. Dist. LEXIS 179077, at *23.[3]

---

[3] In a footnote, the prosecution cryptically states that its "list" of emails that, according to the prosecution, are admissible under Rule 801(d)(2)(D) is "not exhaustive, but only representative." D.E. 248 at 5 n.2. It goes without saying, however, that for any additional emails for which the prosecution has not even identified the declarant, described his or her relationship to the Defendants, or established that any statements fall within the scope of an agency relationship, the prosecution has failed to lay a proper foundation. To the extent that the prosecution seeks, before trial, a blanket permission to introduce any "emails between and among employee-agents of SpineFrontier and IME," *id.* at 5, that improper request should be denied.

II.    **The prosecution has also failed to establish that, as an alternative, the proffered emails are admissible pursuant to Fed. R. Evid. 801(d)(2)(E) as admissions of "co-conspirators" that were made "in furtherance of" the charged conspiracy.**

As an alternative, or perhaps a fallback, the prosecution argues that all the proffered emails were the out-of-court statements of unindicted "co-conspirators" of Dr. Chin and Mr. Humad and made "in furtherance of" their charged conspiracy and, thus, constitute the personal admissions of Dr. Chin and Mr. Humad under Rule 801(d)(2)(E). *See United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977) (holding "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible").

As the party seeking to introduce out-of-court statements as declarations of co-conspirators in furtherance of the charged conspiracy, the prosecution must establish, by a preponderance of the evidence, that "a conspiracy embracing both the declarant and the defendant existed" and that "the declarant uttered the statement during and in furtherance of the conspiracy." *United States v. Sepulveda*, 15 F.3d 1161, 1180 (1st Cir. 1993) (citing *Bourjaily*, 483 U.S. at 175-76); *see United States v. Chan*, No. 16-cr-10268-IT, 2018 U.S. Dist. LEXIS 105204, *4-6 (D. Mass. June 23, 2018) (denying prosecution's motion *in limine* as to its opening statement and, without prejudice, as to any trial testimony, because "the government has [not] yet shown that the statements are nonhearsay as coconspirator statements under Rule 801(d)(2)(E))"). That determination must rest "at least in part on corroborating evidence beyond that contained in the statements at issue." *United States v. Portela*, 167 F.2d 687, 703 (1st Cir. 1999); *see Sepulveda*, 15 F.3d 1181-82 (holding "a co-conspirator's statement, standing alone, is insufficient to meet the preponderance standard for Rule 801(d)(2)(E)," and that district court erroneously admitted out-of-court statements without adequate, independent evidence as to what declarants' "status might have been vis-à-vis the charged conspiracy").

In *Petrozziello*, the First Circuit made clear that the trial court may, in its discretion, require the prosecution to "present all of its non-hearsay evidence first" and only "then decide[] whether that evidence permit[s] reliance on the co-conspirator exception." 548 F.2d at 23 n.3 (stating "[n]othing in [Rule 801(d)(2)(E)] or this opinion requires [that] meticulous approach be abandoned"). Moreover, while statements may be conditionally admitted subject to later proof of the relevant conspiracy, as the prosecution notes, *see* D.E. 248 at 11 (citing *United States v. Capelton*, 350 F.3d 231, 241 (1st Cir. 2003)), the First Circuit has never held that "district courts may not in appropriate cases follow alternative procedures pursuant to Fed. R. Evid. 104 in order to determine the admissibility of evidence under Fed. R. Evid. 801 so long as a proper 'preponderence' ruling is made." *United States v. Campaglia*, 628 F.2d 632, 638 n.3 (1st Cir. 1980); *see United States v, Medina*, 761 F.2d 12, 17 (1st Cir. 1985) (recognizing, in certain instances, "a pre-trial hearing to determine the admissibility of statements under Rule 801(d)(2)(E)" may be "helpful").

In this case, there is good reason to proceed carefully with any *Petrozziello* rulings, especially where the prosecution vaguely alleges a sprawling conspiracy involving some (but not all) employees of two different companies, some (but not all) independent distributors of medical devices, and some (but not all) surgeons who consulted on product development, while more recently suggesting it may attempt to shift its theory to a narrower alleged conspiracy that involved only "certain" employees, surgeons, and distributors.

> Frankly, the underlying co-conspirator exception to the hearsay rule makes little sense as a matter of evidence policy. No special guarantee of reliability attends such statements, save to the extent that they resemble declarations against interest. The exception derives from agency law, an analogy that is useful in some contexts but (as the Advisory Committee noted) is "at best a fiction" here. The most that can be said is that the co-conspirator exception to hearsay is of long standing and makes a difficult-to-detect crime

easier to prove.

*United States v. Goldberg*, 105 F.3d 770, 775 (1st Cir. 1997); *see United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979) ("It has also been candidly proposed by commentators, and implicitly acknowledged by the Advisory Committee for the Federal Rules of Evidence, that the exception is largely a result of necessity, since it is most often invoked in conspiracy cases in which the proof would otherwise be very difficult and the evidence largely circumstantial."). Here, no "necessity" warrants relaxing the rules of evidence to help the prosecution to make its case. The acts that the prosecution alleges to have been conspiratorial occurred in the open through written agreements that counterparties' counsel reviewed and approved. There is no dispute about which doctors served as consultants, what products they used with their patients, or how much they received in consulting fees, and neither Dr. Chin nor Mr. Humad made any effort to conceal any of those facts. To the contrary, directly contrary to the Indictment's allegations, the prosecution has since conceded that SpineFrontier publicly reported all its payments to surgeon-consultants, as the Sunshine Act required.

Moreover, while Rule 801(d)(2)(E) applies to every type of case, it is notable that all the cases that the prosecution cites in its motion, like *Petrozziello* itself, involved charged drug conspiracies. *See United States v. Mitchell*, 596 F.3d 18 (1st Cir. 2010); *United States v. Famania-Roche*, 537 F.3d 71 (1st Cir. 2008); *United States v. Thompson*, 449 F.3d 267 (1st Cir. 2006); *United States v. Capelton*, 350 F.3d 231 (1st Cir. 2003); *United States v. Newton*, 326 F.3d 253 (1st Cir. 2003); *United States v. Portela*, 167 F.3d 687 (1st Cir. 1999). When a declarant participates in the distribution of illegal drugs, it can be relatively easy for the trial court to conclude that there is no legitimate business and the person was a member of the charged drug conspiracy. No person could reasonably believe that he or she was acting lawfully in helping others to sell heroin or cocaine. In contrast, when a declarant who works for a medical device company

14

is alleged to have joined a criminal conspiracy to violate the AKS, the picture is necessarily much murkier, especially given the heighted *mens rea* requirement for such a violation. Even if one were to assume *arguendo* that the CEO and/or CFO of the company conspired to bribe doctors, it is easy to imagine that many other employees of the company, or independent distributors who sold its products, did not agree to commit any crime, even if those individuals did their jobs and contributed to the overall success of the company. After all, as the First Circuit has emphasized, "'[t]he essence' of conspiracy is an agreement to commit a crime." *Portela*, 167 F.2d at 695 (quoting *United States v. Moran*, 984 F.2d 1299, 1300 (1st Cir. 1993)). In this case, if an employee of SpineFrontier or a distributor assisted with the marketing, sale, or use of the company's spine products without the intent to bribe surgeons, the person could not reasonably be considered a "co-conspirator" for the purposes of Rule 801(d)(2)(E).

In its brief discussion of Rule 801(d)(2)(E), the prosecution does not say which of the 9 declarants were, in the prosecution's view, members of the charged conspiracy to violate the AKS. *See* D.E. 248 at 10-12. In its motion, the prosecution vaguely promises that, at trial, it will introduce evidence to establish a conspiracy that included Dr. Chin, Mr. Humad and "various employees of SpineFrontier and IME." *Id.* at 11. In its argument about Rule 801(d)(2)(E), however, the prosecution mentions only Scott Autrey and Vanessa Dudley, ignoring altogether Chantal Goldson, Dan Habbyshaw and Frank Schnur (or any other employees of SpineFrontier or IME). *See id.* at 11-12. The prosecution plans to call Autrey and Goldson as witness at trial, but not Dudley, Habbyshaw, or Schnur. And it does not offer or preview any evidence that Goldson, Habbyshaw, or Schnur knowingly and voluntarily joined a criminal conspiracy with either Defendant (or both) with the specific intent to bribe doctors to use SpineFrontier products.

The prosecution also mentions, in passing, emails that Drs. Josue Gabriel and Joseph

Shehadi sent about their consulting work. *See* D.E. 248 at 7; *see* D.E. 248-27 (Gabriel email logging consulting hours); D.E. 248-28 (Shehadi email logging consulting hours). Yet the prosecution never brought charges concerning Dr. Gabriel, and it recently moved to dismiss the charges involving Dr. Shehadi, while also representing that it would *not* seek to introduce evidence that he was a member of the conspiracy. *See* D.E. 267 (motion to dismiss Count 4). To satisfy Rule 801(d)(2)(E), the prosecution must present independent evidence that these doctor-declarants were members of the charged conspiracy, and it cannot rely solely on their emails to prove that point. *See Portela*, 167 F.2d at 703; *Sepulveda*, 15 F.3d at 1181-82. Aside from the emails, however, the sparse evidence that the prosecution cites in its motion says nothing at all about these two declarants. Notably, as with many of the former employees of SpineFrontier, the prosecution does not plan to call Drs. Gabriel or Shehadi as witnesses at trial. The prosecution "expects" that John Balzer, a distributor, will testify that Dr. Jason Montone conspired with the Defendants to violate the AKS,[4] and that Autrey, a sales representative, will testify he pitched the alleged bribe scheme to Dr. Diana Wilson. *See* D.E. 248 at 5, 11. Neither Balzer nor Autrey dealt with Drs. Gabriel or Shehadi, however, so they cannot provide any evidence about those doctors, much less establish that the surgeons were members of the charged conspiracy. At this point, the prosecution has not provided sufficient evidence to show that these specific surgeons were members of the charged conspiracy, and it has not identified the relevant, independent evidence that it will offer at trial.

The confusion about the charged conspiracy is further compounded by the prosecution's

---

[4]    To be clear, Defendants do not agree with the government's theories or its characterization of the evidence. From the defense perspective, Dr. Montone and Balzer may have conspired with each other to abuse the consulting program by overbilling SpineFrontier. Neither of the Defendants shared any such conspiratorial intent.

significant admission, buried in a footnote, that not "every interaction between every doctor and SpineFrontier related to consulting was a sham." D.E. 248 at 4 n.1. The prosecution says that, at trial, it only intends to prove "a conspiracy between Chin and Humad, and others, and *certain* doctors, pursuant to which Chin and Humad paid *certain* doctors for use of SpineFrontier's products, rather than for bona fide consulting." *Id.* (emphasis in original). But even now, on the eve of trial, the prosecution has not identified these "certain" surgeons, and in discussions with defense counsel, it has refused to do so.[5]  It is impossible, therefore, for this Court to rule that out-of-court statements of unindicted co-conspirators are admissible, unless and until the prosecution identifies the specific declarants as co-conspirators and proves, by a preponderance of the evidence, that they each knowingly and voluntarily joined a criminal agreement with Dr. Chin and Mr. Humad with the specific intent to bribe doctors to use SpineFrontier products through a sham consulting program.

Finally, it is not sufficient for the prosecution to show that a declarant was a co-conspirator; to be admissible under Rule 801(d)(2)(E), the declarant must have made his or her out-of-court statement "in furtherance of the charged conspiracy." *See United States v. Ford*, 839 F.3d 94, 105-08 (1st Cir. 2016) (holding trial court erroneously admitted out-of-court statement of co-conspirator and "stretched the in furtherance exception too far"). The prosecution does not even

---

[5] In fact, were the prosecution to pursue at trial the alternative conspiracy theory that its motion now suggests, it would risk producing an impermissible variance from the actual Indictment returned by the Grand Jury. Because "[t]he agreement is the *sine qua non* of a conspiracy," it is "essential to determine what kind of agreement or understanding existed as to each defendant." *United States v. Dellosantos*, 649 F.3d 109, 115 (1st Cir. 2011) (internal quotation marks omitted). This analysis includes asking whether the jury could find "the (express or tacit) agreement *that the indictment charges*." *Id.* at 117 n.10 (quotation marks omitted; emphasis added). An impermissible variance can occur even where an indictment alleges a broader conspiracy, but the government ultimately proves only a narrower version of it, despite both being a violation of the same statutory provisions. *See, e.g.*, *id.* at 124.

attempt to make that showing with regard to many of its proffered emails. For example, although Balzer pleaded guilty to conspiring to violate the AKS (and tampering with a witness), *see United States v. Balzer*, No. 1:20-cr-10158-WGY (D. Mass.), D.E. 1 (information) & D.E. 8 (plea agreement), his email on June 6, 2013 to Mr. Humad, *see* D.E. 248-29, primarily concerns his own commissions as a distributor for SpineFrontier, not Dr. Montone's payments as a consultant for the company. Similarly, Goldson, whom the prosecution has never identified as an unindicted co-conspirator, exchanged several emails with Mr. Humad that appear to have attached spreadsheets of hours and payments for surgeons who consulted for SpineFrontier. Although the prosecution did not submit those spreadsheets with its motion, they presumably listed all surgeons, not only the alleged co-conspirators. To the extent that any such "statements" concern innocent doctors who, as the prosecution now appears to concede, provided valuable consulting services for fair market compensation, they cannot have been in furtherance of the charged conspiracy. But in its motion, the prosecution blithely disregards such critical distinctions.

Given the prosecution's failure to lay a proper foundation for its supposed "co-conspirator" statements, this Court's conclusion in *Chan* applies equally here: "At this juncture, . . . the government has yet to offer any evidence – other than the government's summaries of the statements at issue – that a conspiracy existed and the statement were made during and in furtherance of the conspiracy." 2018 U.S. Dist. LEXIS 105024, at *5. According, this Court "cannot make the necessary determination at this time under Rule 801(d)(2)(E)." *Id.* As in *Chan*, therefore, this Court should bar the prosecution from referring to such evidence in its opening statement and require it to "seek permission from the court after making the necessary showing under Rule 801(d)(2)(E)" before offering such evidence at trial. *Id.* at *6.

**CONCLUSION**

For the foregoing reasons, Defendants Kingsley Chin and Aditya Humad respectfully request that this Court deny the prosecution's Motion *in Limine* re: Admissibilty of Emails, D.E. 248, and bar the prosecution from presenting or referring to these (or other similar) documents at trial unless and until the prosecution establishes, by a preponderance of the evidence, that such out-of-court statements were made by authorized "agents" or unindicted "co-conspirators" acting "in furtherance of" the charged conspiracy.

Respectfully submitted,

**KINGSLEY CHIN**

By his attorneys,

/s/ *Joshua Solomon*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
*bpollack@psdfirm.com*
*jsolomon@psdfirm.com*

**ADITYA HUMAD**

By his attorneys,

/s/ *Daniel N. Marx*
Daniel N. Marx (BBO #674523)
William W. Fick (BBO #650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA   02110
(857) 321-8360
*dmarx@fickmarx.com*
*wfick@fickmarx.com*

## CERTIFICATE OF SERVICE

I, Daniel N. Marx, hereby certify that on March 3, 2025, I caused the foregoing document to be filed through the ECF system, and it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Daniel N. Marx*
Daniel N. Marx