IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES

v.

KINGSLEY R. CHIN and
ADITYA HUMAD,
    *Defendants*.

No. 1:21-cr-10256-IT

**DEFENDANTS' RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE*
CONCERNING VARIOUS NULLIFICATION ARGUMENTS [D.E. 256]**

Defendants, Kingsley Chin and Aditya Humad, respectfully respond to the government's Motion *in Limine* Concerning Various Nullification Arguments. D.E. 256. Defendants recognize that requesting jury nullification would be improper, and they have no intention of doing so. But the government's motion sweeps far too broadly in seeking to exclude a wide range of relevant evidence and permissible argument on enumerated subjects.

Notably, the principal cases that the government cites all involved *explicit* appeals to nullification. *See, e.g.*, *United States v. Manning,* 79 F.3d 212, 219 (1st Cir. 1996) (defense counsel requested "permission to appeal, in his closing argument, to the jury's power of nullification by informing the jury of the prison term [defendant] would face"); *United States v. Bunchan*, 626 F.3d 29, 34 (1st Cir. 2010) (addressing unpreserved claim that jury instructions "improperly instructed the jury as to its power to nullify"); *United States v. Sepulveda*, 15 F.3d 1161, 1189 (1st Cir. 1993) (defense counsel "invited the jury to 'send out a question' concerning th[e] doctrine" of jury nullification); *United States v. Luisi*, 568 F. Supp. 2d 106, 110 (D. Mass. 2008) (individual juror's refusal to follow the law "was a form of jury misconduct that could be classified as nullification"). The government's motion, seeking to prohibit a much broader swath of evidence and argument,

1

implies a false equivalency between zealous argument in support of a "not guilty" verdict on the merits and improper appeals to "nullification."

"There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial." *Herring v. New York*, 422 U.S. 853, 858 (1975). "The Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor … unless the argument is not within the issues in the case, and the trial court has no discretion to deny the accused such right." *Id*. at 860. Thus, beyond the bare "elements of the crime charged or applicable defenses," D.E. 256 at 2, a defendant also has "a right to be heard in summation of the evidence from the point of view most favorable to him" on other important issues such as the "credibility assessment" of prosecution witnesses. *Herring*, 422 U.S. at 864.

To challenge credibility, a defendant has the right to develop evidence and to elicit testimony about improper bias or motive. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) ("[T]he right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable.") (citing *United States v. Abel*, 469 U.S. 45, 50 (1984)); *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986) ("'[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.") (quoting *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974)); *Greene v. McElroy*, 360 U.S. 474, 496 (1959) (stating that "[c]ertain principles have remained relatively immutable in our jurisprudence," including the right of the accused to challenge "the testimony of individuals . . . who . . . might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy").

Against that legal backdrop, the Court should reject the government's request to bar

2

evidence and testimony on the enumerated subjects.

### *Civil Settlements*

The government states that while "it does not seek to preclude the defense from cross-examining witnesses as to their civil settlements with the government," it "does seek a ruling to prevent implicit or explicit reference to the notion that the government could have similarly chosen to forgo criminal charges with the defendants on trial." D.E. 256 at 1, n.1.

To be clear, the defense will not argue that the government could or should have made civil settlements with them in lieu of pursuing criminal charges.[1] But Defendants must be permitted to conduct robust cross-examination of government witnesses about their own civil settlements, the terms of those settlements (including requirements to testify in a certain manner), the benefits to the recipients of those settlements (including the avoidance of criminal charges with serious potential custodial, financial, and collateral consequences, particularly where the government improperly promised or suggested the witnesses could avoid criminal charges by entering into civil settlement agreements that included agreements to facts), and the give-and-take with the government in the process of negotiating those settlements. *Cf.* Defendants' Motion *in Limine* to Preclude Testimony Based on Improper Inducement and Inadequate Disclosures, D.E. 255, and the cases cited therein.

### *Punishment*

Defendants will not seek to introduce evidence, elicit testimony, or make arguments about the severity of punishment they may face or elicit sympathy on that basis.[2]

---

[1] Indeed, as the Court is aware, the government *did* enter civil settlements with Defendants, and as the government has properly acknowledged, evidence and testimony about those settlements would not be admissible at trial in this case.

[2] The government has not identified any authority supporting its suggestion that it would be improper for defense counsel to make a short, anodyne, factually and legally accurate comment

3

But, again, Defendants must be permitted to conduct aggressive cross-examination of cooperating witnesses for the government about the potential punishment those witnesses face, and leniency they have received or expect to receive, as inducements and rewards for their testimony. *See United States v. Kinsella*, 622 F.3d 75, 77 (1st Cir. 2010) (noting with approval that defense counsel "aggressively confronted [the cooperating witness] on cross-examination, using the plea agreement and light sentence to attack his credibility").

### *Merits of the Prosecution*

The government does not explain what it means when it asks the Court to "prevent argument or testimony … concerning the merits of the prosecution." D.E. 256 at 1. Read literally, it would seem to be a preposterous request to bar the defense from questioning the investigation, from eliciting information about the pressure that cooperating witnesses felt from their interaction with the government, or defending the case at all.

But it is well-settled that defendants may present evidence and argument concerning deficiencies in an investigation, such as failures to conduct certain tests, pursue certain lines of inquiry, improperly pressure witnesses to change their stories, or follow standard law enforcement procedures. *See, e.g.*, *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988) (explaining that while police have no constitutional duty to perform any particular test, the defense may argue to the jury that a particular test police failed to administer may have been exculpatory); *United States v. Lassend*, 545 Fed. Appx. 3, 4 (1st Cir. 2013) (finding that court's instruction adequately accommodated trial

---

in closing that the defendant's "freedom … hang[s] in the balance" to focus the jury on the seriousness of the task at hand. Notably, in *United States v. Yu*, 19-cr-10195-WGY, cited by the government, D.E. 256 at 1, n.2, the use of that locution in a single sentence by one of undersigned counsel did not draw a government objection or rebuke from the trial judge—the same judge who authored the lengthy excoriation of jury nullification cited by the government in *United States v. Luisi*, 568 F. Supp. 2d 106 (D. Mass. 2008). *See Bunchan*, 626 F.3d at 35 ("[T]he lack of any objection by either party suggests that, in context, the challenged passage was not troubling.").

defense "premised at least in part on a purported faulty police investigation"); *see also Commonwealth v. Bowden*, 379 Mass. 472, 485-86 (1980) ("The failure of the authorities to conduct certain tests or produce certain evidence was a permissible ground on which to build a defense . . . . The fact that certain tests were not conducted or certain police procedures not followed could raise a reasonable doubt as to the defendant's guilt in the minds of the jurors.").

### *Selective Prosecution*

Defendants will not argue that the government engaged in improper "selective prosecution." The defense is, however, entitled to elicit evidence and question witnesses about their biases, and how such biases may have influenced the behavior and testimony of witnesses, including government agents. For example, both Defendants are persons of color and immigrants to the United States—Dr. Chin was born and raised in Jamaica while Mr. Humad was born and raised in Kuwait to parents originally from India. In a recorded conversation, two government witnesses discussed their belief that Dr. Chin and Mr. Humad were more willing to pay kickbacks because they are "immigrants":

```
2019.02.08 Jason Montone and John Balzer                    Page 60

 1   MONTONE:  How stupid were they?  I feel like, you know, they
 2             should've known better.
 3   BALZER:   I feel like -- uh, and I -- and I've seen this --
 4             I've seen this with immigrants: if shit works differently
 5             in other countries, and it's like they come from these
 6             corrupt or, uh, broken down, you know, you know, in-- uh,
 7             structures or whatever, (coughs) and they -- and they
 8             [01:38:00] see that as bein', like, just the way things
 9             are done.  I mean, in most of the world, kickbacks are
10             how things get done, from the top to the -- from the
11             bottom to the top.
```

[cite] This kind of bias—based on national origin and, implicitly, race or ethnicity—is plainly a proper subject of cross-examination and argument. *See Brinson v. Walker*, 547 F.3d 387, 393 (2d Cir. 2008) ("It is hard to conceive of a more 'prototypical form of bias' than racial bias. We view these cases as specific examples of the 'relatively immutable' principle … that under the Confrontation Clause the accused must be given a full and fair opportunity to cross-examine adverse witnesses for bias that may affect the veracity of their testimony.").

### *Custom and Practice*

Defendants will not argue that the jury should find them not guilty of conspiring to pay and paying illegal kickbacks because "everybody is doing it." D.E. 256 at 3. Because the crimes charged here require a defendant to know that his conduct violated the law, however, Defendants are entitled to develop evidence that consulting surgeons, who have decided to become cooperating witnesses and whom the government has alleged to have been co-conspirators, also had consulting agreements with other medical device companies, that such agreements are routine in the industry, and that they are not inherently unlawful. Moreover, "evidence about the Defendant's compliance with industry custom and practice is relevant to the subjective portion of the good faith defense." *Morse v. MER Corp.*, No. 08-cv-1389-WTL-TAB, 2010 U.S. Dist. LEXIS 124752, *3 (S.D. Ind. Nov. 22, 2010).

### *Lack of Patient Harm*

Evidence and arguments concerning lack of patient harm are addressed in Defendants' response to the government's separate motion *in limine* on that subject.

### *Mens Rea*

The government ignores the broad surrounding circumstances that are relevant on *mens rea* issues when inviting this Court to expand the usual limitations on *express* requests of a jury to

nullify proof of guilt because of sympathy or other irrelevant or improper reason. The law on the scope of matters relevant to *mens rea* is also contained in Defendants' response to the government's separate motion *in limine* on the subject of lack of patient harm.

## Conclusion

For the foregoing reasons, the government's request to bar the five enumerated categories of "argument or testimony" should be denied.

Respectfully submitted,

**KINGSLEY CHIN**

By his attorneys,

/s/ *Joshua L. Solomon*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

**ADITYA HUMAD**

By his attorneys,

/s/ *William W. Fick*
Daniel N. Marx (BBO #674523)
William W. Fick (BBO #650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA   02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

**Certificate of Service**

I, William W. Fick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 3, 2025.

/s/ William W. Fick