UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KINGSLEY R. CHIN,<br>ADITYA HUMAD<br><br>                Defendants. | No. 1:21-cr-10256-IT |

**GOVERNMENT'S RESPONSE TO DEFENDANTS' JURY INSTRUCTIONS**

Pursuant to the Court's amended pretrial order (Dkt. No. 197, as modified by Dkt. No. 228), the government submits its responses and objections to the Defendants' Proposed Jury Instructions (Dkt. No. 258). The government reserves all rights to modify or add to these objections in advance of the charging conference.

*First*, as a preliminary matter, the government respectfully submits that the Court should deliver the jury instructions as drafted by the government. The government drafted these instructions to fairly capture the applicable legal rules and principles without placing undue emphasis on any particular consideration and without including superfluous, unnecessary, and potentially distracting instructions.

*Second*, as to general instructions that apply in all criminal matters (such as the presumption of innocence, the duty of the jury, and instructions concerning the jury's deliberations), the government has submitted instructions on these issues, but assumes that the Court will instruct the jury in its customary manner.

*Third*, the government submits that certain of the Defendants' proposed jury instructions are unnecessary, place undue emphasis on irrelevant or collateral issues, or otherwise place an

improper thumb on the scale. Based on these concerns, the following of the Defendants' Proposed Jury Instructions should be omitted in their entirety.

| |
|---|
| Defendants Proposed Jury Instruction No. 9 - Competing Inferences |
| Defendants Proposed Jury Instruction No. 10 - Inference of Regularity |
| Defendants Proposed Jury Instruction No. 16 - Number of Witnesses Called Is Not Controlling |
| Defendants Proposed Jury Instruction No. 19 - Not Here to Decide or Opine on Policy |
| Defendants Proposed Jury Instruction No. 21 - Violation of Company Policy Is Not A Crime |
| Defendants Proposed Jury Instruction No. 28 - 1st Conspiracy Element (Cont'd): Agreement Cannot Be With Corporation |

*Fourth*, the government has identified several areas of significant difference between the government and the Defendants' proposed instructions concerning the substantive elements of the charged offenses. Each is discussed below.

### A. A "Missing Witness" Instruction is Inappropriate (Defendants' Proposed Instruction No. 17)

The Defendants propose a "missing witness" instruction:

> If it is peculiarly within the power of the government to produce a witness who could give material testimony, or if a witness, because of [his/her] relationship to the government, would normally be expected to support the government's version of events, the failure to call that witness may justify an inference that [his/her] testimony would in this instance be unfavorable to the government. You are not required to draw that inference, but you may do so. No such inference is justified if the witness is equally available to both parties, if the witness would normally not be expected to support the government's version of events, or if the testimony would merely repeat other evidence.

Dkt. No. 258 (Proposed Instruction No. 17). Defendants' proposal is inappropriate. Any witness to whom this instruction might apply is equally available to the Defendants and may be called by them in their case. If any instruction on the subject is given, it should be an "Equally Available Witness" instruction:

> There are some persons whose names you have heard during the course of the trial, but who did not appear to testify and as to whom there was no stipulation about what they would testify to if

>they appeared. Each party had an equal opportunity or lack of
>opportunity to call any of those persons as witnesses. Therefore,
>you should not draw any inferences or reach any conclusions as to
>what they would have testified had they been called. Their absence
>should not affect your judgment in any way.

*United States v. Abdelaziz, et al.*, 19-cr-10080-NMG, Dkt. No. 2407 at 22.

### B. *Remuneration Defined (Defendants' Proposed Instruction Nos. 25 & 26)*

Defendants propose that the Court define "Remuneration" to mean:

>providing something of value to the intended recipient.
>Remuneration may be paid in cash or by giving property or
>services. It may be offered or paid openly or in a concealed
>fashion. It may be offered or paid directly or indirectly, or through
>another person. But the focus is on whether it constitutes a thing of
>value to the intended recipient in whatever form offered or paid.

Dkt. No. 258 (Instruction No. 25). The government does not object to this portion of the instruction.

The Defendants' proposal, however, then continues to provide an extraneous explanation concerning the requirement to prove other elements of an Anti-Kickback Statute violation "remuneration is illegal under the Anti-Kickback Statute only when all of the other elements of the Anti-Kickback Statute are also met" and an unnecessary and confusing discussion of what is not remuneration "monies paid by the federal health care program, such as the Medicare program or Medicaid program, to physicians as reimbursement for products do not constitute remuneration offered or paid indirectly by any of the defendants before you." *Id.* This language is superfluous, misleading, and potentially confusing and should not be included in the Court's instruction.

### C. *Parallel Conduct Instruction (Defendants' Proposed Instruction No. 27)*

The Defendants propose the following instruction:

>The fact that Dr. Chin and Mr. Humad and various other people
>engaged in similar or parallel conduct or associated with each other

> or discussed common aims or interests, worked for the same company, or even the fact that one of them may have known that the criminal conduct was taking place at the company, are all facts which by themselves do not establish the existence of a conspiracy.

Dkt. No. 258 (Proposed Instruction No. 27). This proposal is similar to language in the First Circuit Pattern Instruction for a conspiracy charge—but omits key portions:

> Mere similarity of conduct among various people, or the fact that they may have associated with each other or discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy, *but you may consider such factors*.

First Circuit Pattern Jury Instruction, § 4.18.371 (emphasis added). The Court's instruction should make clear that the jury may appropriate consider these factors in reaching their verdict as to the Defendants' guilt.

### D. Multiple Conspiracy Instruction (Defendants' Proposed Instruction No. 29)

Defendants propose a multi-conspiracy instruction. Dkt. No. 258 (Proposed Instruction No. 29). The Court should provide such an instruction only if "'on the evidence adduced at trial, a reasonable jury could find more than one such illicit agreement, or could find an agreement different from the one charged.'" *United States v. Brandon*, 17 F.3d 409, 449 (1st Cir. 1994) (quoting *United States v. Boylan*, 898 F.2d 230, 243 )1st Cir. 1990) *United States v. Ramírez-Rivera*, 800 F.3d 1, 45–46 (1st Cir. 2015). *See also* Pattern Crim. Jury Instructions for the First Circuit, No. 4.18.371(1), comment 5. If the evidence supports such an instruction, then the jury should be instructed that the government must prove:

> That the conspiracy specified in the indictment, and not some other agreement or agreements, existed at or about the time or times specified in the indictment. It is not enough that the government simply prove that some type of conspiracy existed, even one involving some of the same alleged conspirators. The proof, rather, must persuade you that the conspiracy proved is in fact the one alleged in the indictment.

*See United States v. Bedini*, 861 F.3d 10, 17–18 (1st Cir. 2017) (holding this instruction to be "substantively correct.").

### E. Application of the "Knowing and Willful" Mens Rea Requirement (Defendants' Instructions Nos. 31 and 36)

In its draft instructions, the government proposed that the jury be instructed that the substantive Anti-Kickback statute violations have three elements with the first being:

> that the defendant knowingly and willfully offered or paid, or caused to be offered or paid, remuneration including any kickback, bribe or rebate

Dkt. No. 253.01 (Proposed Instruction No. 21). The Defendants' proposal includes four elements, including:

> First, offering or paying remuneration to the surgeon at issue.
> …
> Fourth, that Dr. Chin or Mr. Humad acted knowingly, willfully, and intentionally.

Dkt. No. 258 (Proposed Instruction No. 36).

The government does not object to breaking out the *mens rea* element as a separate offense element. However, the government objects to the Defendants' proposed *mens rea* description in three respects. First, the Defendants' proposed instruction describes this element as "knowingly, willfully, and *intentionally*," improperly heightening the *mens rea* requirement beyond the statutory text which applies to "[w]hoever *knowingly and willfully* offers or pays any remuneration." 42 U.S.C. § 1320a-7b(b)(2) (emphasis added). Second, the Defendants' proposed explanation of the *mens rea* element compounds the issue by further heightening the *mens rea* requirement beyond what the law requires. Specifically, defendants' proposed instruction describes the "knowing and willful" element at extended length:

> To satisfy this fourth element, the government must prove beyond a reasonable doubt that the defendant was aware of the legal duties that were imposed by the Anti-Kickback Statute. That does not

> mean that he had to know there is a specific statute that was called the Anti-Kickback Statute and found in some place in the United States Code. But the defendant must be shown to have known that there are legal duties of the type that are embodied in that statute and to have specific intent to violate those duties. It is not a knowing and willful violation for a defendant to mistakenly violate the law because of a misunderstanding of what the law requires, or even to do something that the defendant knew was wrong, unless the defendant also knew that it was illegal. Nor is it sufficient to find a knowing and willful violation that a defendant knew of his or its legal obligations generally, if he did not also know that his specific actions violated those legal obligations. The government is not required to prove that the defendant knew of the specific law that was violated. But the government is required to prove that the defendant knew that his or its conduct was illegal.

Dkt. No. 258 (Proposed Instruction No. 36). *See also id.* (Proposed Instruction No. 31). This extended description of the "knowing and willful" element is at odds with caselaw making clear that the "knowing and willful" *mens rea* standard in the Anti-Kickback Statute has the same meaning as in other criminal law contexts. *See United States ex rel. Hart v. McKesson Corp.*, 96 F. 4th 145, 157 (2d Cir. 2024) ("[W]e hold that the term 'willfully' in the AKS means what it typically means in federal criminal law. To act willfully under the AKS, a defendant must act with a 'bad purpose,' … In other words, the defendant must act 'with knowledge that his conduct was unlawful.'"). Consistent with this interpretation, the AKS *mens rea* element should be described with a standard "knowing and willful" instruction:

> The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.
> …
> To act "willfully" means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed— that is to say, with bad purpose, either to disobey or disregard the law—not to act by ignorance, accident or mistake.

First Circuit Pattern Jury Instruction, §§ 2.15, 2.17.

Finally, consistent with Subsection (h) of 42 U.S.C. § 1320a-7b—which provides that "[w]ith respect to violations of this section [§ 1320a-7b], a person *need not have actual knowledge of this section or specific intent* to commit a violation of this section"—the jury should also be instructed that the "defendant need not be aware of the specific law or rule that his conduct may be violating."

**F. The Improper Inducement Standard (Defendants' Proposed Instruction No. 32)**

The Defendants propose that the Court instruct the jury that "the statutory requirement of improper inducement is satisfied only if remuneration is offered or paid as a *quid pro quo* for the specific purchase of the product." Dkt. No. 258 (Instruction No. 32). This definition is far too narrow and improperly engrafts specificity requirements from public corruption statutes onto the Anti-Kickback Statute. *See* Dkt. No. 258, Fn. 37, 39 (citing cases interpreting 18 U.S.C. § 201 and 18 U.S.C. § 1346). The textual language of the Anti-Kickback Statute is broader in application than these public corruption statutes and encompasses "whoever *offers* or pays *any remuneration* (including any kickback, bribe, or rebate) … *to any person to induce such person* to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item…." 42 U.S.C. § 1320a-7b(b)(2) (emphasis added). While the Defendants focus solely on the word "kickback"—narrowly described as an exchange for a "specific purchase of the product"—the AKS is broader; it criminalizes *any remuneration* given by a defendant with the intent to induce purchases or referrals. *Id*.

In addition, the government is not required to prove a *quid pro quo* was effected. In addition, the government is not required to prove a *quid pro quo*. *United States ex rel. Bawduniak v. Biogen Idec, Inc.*, No. 12-cv-10601-IT, 2018 WL 1996829, at *3 (D. Mass. Apr. 27, 2018) ("Relators need not show that a quid pro quo exchange occurred[.]") *United States v. Regeneron Pharms., Inc.*, No. 20-cv-11217-FDS, 2020 WL 7130004, at *11 (D. Mass. Dec. 4,

2020) ("[T]he AKS does not require evidence of an explicit *quid pro quo*[.]"); *see also United States ex rel. Witkin v. Medtronic, Inc.*, No. 11-cv-10790-IT, 2024 WL 1892405, at *14 (D. Mass. Mar. 31, 2024) ("Importantly, a kickback need not be successful to violate the AKS: The statute 'does not require evidence of a 'quid pro quo' in the sense that each bribe must successfully generate referrals.'" (quoting *United States v. Teva Pharms. USA, Inc.*, 2019 WL 1245656, at *10 (S.D.N.Y. Feb. 27, 2019)). Merely *offering* a kickback is a crime under the AKS. *See United States v. Regeneron Pharms, Inc.*, -- F. 4th -- , 2025 WL 520466, at *6 (1st Cir. Feb. 18, 2025) ("Criminal liability under the AKS exists to protect patients from doctors whose medical judgments might be clouded by improper financial considerations. So, it makes sense for the AKS to criminalize even those kickbacks that do not ultimately cause a referral or a purchase.") (cleaned up); *Pharm. Coalition for Patient Access v. United States, et al.*, 126 F.4th 947, 955 (4th Cir. 2025) ("Put simply, a party can violate the Anti-Kickback Statute by offering remuneration without a corresponding violation by the offeree, if the latter did not seek or accept the remuneration, because furnishing covered healthcare goods is not inherently criminal.").

## G. The One Purpose Test

Consistent with the Anti-Kickback Statutes's textual language, the Court's instruction to the jury concerning the "inducement" element should make clear that "a defendant violates the AKS when *at least one (rather than the primary or sole)* purpose of the remuneration [he] provides is to induce purchase of a federally reimbursable healthcare product." *United States ex rel. Camburn, et al. v. Novartis Pharm. Corp.*, No. 22-2708, Slip Op. at 12 (2d Cir. Dec. 27, 2024) (emphasis added).[1] This instruction is particularly necessary in this context where the

---

[1] *See also United States v. Greber*, 760 F.2d 68, 71-72 (3d Cir. 1985) ("If the payments were intended to induce the physician to use Cardio-Med's services, the statute was violated, even if the payments were also intended to compensate for professional services."); *United States v. Woodward*, 149 F3d 46, 71-72 (1st Cir. 1998) (citing *Greber* with approval in deprivation of

evidence may suggest that the Defendants acted with more than one purpose—using consulting payments both to compensate for whatever consulting surgeons may have performed, but also to illegally induce surgeons to use SpineFrontier's products or to reward them for such use. The law is clear that under the AKS only "one purpose" of the offered remuneration need be to induce federal healthcare program claims. *See, e.g., Greber*, 760 F.2d at 71-72; *see also United States v. Teva Pharms. USA, Inc.*, 560 F. Supp. 3d 412, 419 (D. Mass. 2021) ("The intent requirement may be satisfied as long as at least one purpose of the remuneration was to induce Medicare purchases.") (cleaned up)); *United States v. Regeneron Pharms, Inc.*, No. 20-cv-11217-FDS, 2023 WL 7016900, at *4 (D. Mass. Oct. 25, 2023) ("A person or company who offers or pays remuneration to a healthcare provider violates the AKS so long as *one purpose* of the offer or payment is to induce Medicare or Medicaid patient referrals.") (cleaned up) (emphasis in original)).

### H. A Good Faith Instruction is Not Necessary (Defendants' Proposed Instruction No. 34)

The government submits that the lengthy "good faith" instruction proposed by the Defendants, Dkt. No. 258 (Proposed Instruction No. 34), is unnecessary. Although disagreeing about the precise form of the instruction, both parties agree that the Court should instruct the jury on "Willfulness" and that the Court's willful definition should express that the Defendants acted "with bad purpose, either to disobey or disregard the law—not to act by ignorance, accident or mistake." *See* Dkt. No. 253 (Govt's Proposed Instruction No. 20); Dkt. No. 258 (Defendants'

---

honest services case); *United States v. Bay State Ambulance & Hospital Rental*, 874 F.2d 20, 30 (1st Cir. 1989) (declining to decide whether the 'primary purpose' or 'one purpose' test was appropriate in a Medicare Anti-Kickback Act case because the defendants had been convicted under the more stringent 'primary purpose' standard, but citing with approval the reasoning of *Greber*); *United States v. Lahue*, 254 F.3d 900, 911 (10th Cir. 2001); *United States v. McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000); *United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998); *United States v. Kats*, 871 F.2d 105, 108 (9th Cir. 1989); *United States v. Reichel*, No. 15-cr-10324-DPW (D. Mass. 2015), DN 244 at 5.

Proposed Instruction No. 31). This definition—encompassed in the elements of the offense—is incompatible with good faith and thus, as the First Circuit has explained, no further instruction on good faith is required. *See, e.g., United States v. Dockray*, 943 F.2d 152, 155 (1st Cir. 1991) ("where the court properly instructs the jury on the element of intent to defraud—essentially the opposite of good faith—a separate instruction on good faith is not required."); *Cheek v. United States*, 498 U.S. 192, 201 (1991) ("We conclude[] that after instructing the jury on willfulness, '[a]n additional instruction on good faith was unnecessary.'"); *United States v. Gonsalves*, 435 F.3d 64, 71 (1st Cir. 2006).

I. **Venue (Defendants' Proposed Instruction No. 37)**

    The Defendants propose the following Venue instruction:

> Each of you must unanimously agree that the government has proven that the same, particular overt act was committed in the District of Massachusetts.

Dkt. No. 258 (Proposed Instruction No. 37). This instruction misstates the law on venue and fails to inform the jury that venue, which is not an element of the criminal offense, is subject to a lower standard of proof (preponderance of the evidence) than offense elements. *See United States v. Lanoue*, 137 F.3d 656, 661 (1st Cir. 1998) ("Venue is not an element of the offense, and it must be proven only by a preponderance of the evidence.").

    Venue for a conspiracy "is proper where the conspiracy is formed or in any district in which an act in furtherance of the charged conspiracy has taken place." *United States v. Valenzuela*, 849 F.3d 477, 487-88 (1st Cir. 2017). The overt act need not be undertaken by a co-conspirator who is in the district, but can instead be an act that a co-conspirator "caused" to occur in the district. *See United States v. Kim*, 246 F.3d 186, 192 (2d Cir. 2001) (finding venue proper because defendant "caused communications to be transmitted into and out of the Southern District" because "he approved fraudulent invoices knowing that the UNMIBH paid its vendors

from New York banks"). Moreover, under 18 U.S.C. § 3237(a), venue for conspiracy, which is a continuing offense, lies in "any district in which [the conspiracy] was begun, continued, or completed." *See United States v. Rutigliano*, 790 F.3d 389, 395 (2d Cir. 2015). Consistent with this law, the jury should be instructed as follows:

> The Indictment alleges that some act or acts in furtherance of the crimes charged occurred in the District of Massachusetts. There is no requirement that all aspects of the crimes charged or the entire conspiracy take place here in the District of Massachusetts. Before you may return a verdict of guilty, however, if that is your decision, the government must convince you that some act in furtherance of the crimes took place in the District of Massachusetts.

Ninth Circuit Pattern Jury Instructions § 6.32.

### J.  *Withdrawal from the Conspiracy (Defendants' Proposed Instruction No. 39)*

The Defendants propose an instruction concerning withdrawal from the conspiracy, including specifically that a defendant may withdraw "by severing his ties to the business if his employment at the business was essential to the defendant's involvement in the alleged conspiracy and the defendant no longer maintained any ties with the business. Dkt. No. 258 (Proposed Instruction No. 39).

Withdrawal is an affirmative defense to be proven by the defendant. *See United States v. Belanger,* 890 F.3d 13, 31 (1st Cir. 2018) (quoting *United States v. Potter*, 463 F.3d 9, 20 (1st Cir. 2006) (citation omitted)). The government does not expect that there will be any evidence that either Chin or Humad severed ties with SpineFrontier during the period of the conspiracy and submits that, accordingly, this instruction would be unwarranted, unnecessary, and confusing to the jury.

CONCLUSION

The government respectfully submits that the Court should deliver the instructions drafted by the government (Dkt. No. 253) with such modifications as the Court determines are appropriate. In the alternative, the Court submits that the Court should adopt the objections described above.

*Respectfully Submitted*,

LEAH B. FOLEY
United States Attorney

*/s/ Chris Looney*
ABRAHAM R. GEORGE
CHRISTOPHER LOONEY
MACKENZIE A. QUEENIN
Assistant U.S. Attorneys
1 Courthouse Way
John Joseph Moakley U.S. Courthouse
Boston, MA 02210
(617) 748-3100

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system on March 3, 2025, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) (with paper copies to be sent to those indicated as non-registered participants).

*/s/ Chris Looney*
CHRISTOPHER R. LOONEY
Assistant United States Attorney